## CHAMBERS COUNTY *v.* CLEWS.

1. Though a court erroneously overrule a demurrer to a special plea specially demurred to, yet if on another plea the whole merits of the case are put in issue, the error in overruling the demurrer is not ground for reversal.

2. Where a declaration in assumpsit upon bonds of a county issued to a railroad company, alleges that the bonds were issued by the county in pursuance of an act of legislature named, and that they were purchased by the plaintiffs for value and before any of them fell due, a plea of the general issue puts in issue the question of authority to issue, *bona fides* and notice.

3. Where, as in Alabama, a statute enacts that the execution of a written instrument cannot be questioned unless the defendant by a sworn plea deny it, a county sued in *assumpsit* with a plea of general issue, on instruments alleged to be its bonds issued to a railroad, cannot object that there was no evidence that the seal on the bonds was the proper seal.

4. Nor, unless the bill of exceptions show what revenue stamp was on the bonds, will this court, on an objection which assumes that one of a certain value was on them, decide whether a sufficient one was or was not there.

5. On a suit against a county on its bonds issued to a railroad company, a transcript from the books of the county commissioners in which appeared a letter from the president of the road, dated at a certain time, and speaking of the road as being "now *located*," is no evidence of itself that the road was at the time not completed.

ERROR to the District Court for the Middle District of Alabama.

Clews & Co. brought an action at law, in the court below, against Chambers County, Alabama, to procure payment of certain coupons attached to ninety-three bonds of $1000 each, issued by the county.

The bonds purported to be issued in aid of a certain railroad named in each of them, and to have been issued under the authority and in pursuance of an act of the legislature of the State of Alabama, approved December 31st, 1868.

The statute authorized a subscription and loan by the county only upon the basis of a proposal in writing from the railroad company, made by the president and a majority of its directors, proposing that the county should take an amount of its capital stock, to be named, at a certain price

per share, and pay for the same in such bonds of the county as should be specified in the proposal. This proposition was to be submitted to the qualified electors of the county for their acceptance or rejection. Notice of the terms and amount of the proposed subscription was required to be published. If a majority of the qualified voters voted for "subscription," the proposition of the company was to be deemed to be accepted, and the subscription authorized to be made in the manner and upon the terms set forth in the application, and the bonds might be issued in payment thereof.

The plaintiffs alleged in their complaint that they were the owners and holders of the bonds and coupons mentioned, "and that they were purchased by them for value before any of them fell due."

Each bond was set out—each being for $1000—and each being declared to be one of a series issued by the said county of Chambers under authority and in pursuance of an act of the legislature of the State of Alabama entitled " An act to authorize the several counties, towns, and cities of Alabama to subscribe to the capital stock of such railroads throughout the State as they may consider most conducive to their interests;" and approved December 31st, 1868.

*Pleas:* 1st. A special plea that the bonds were issued by the authorities of Chambers County in payment of a subscription to the stock of the railroad company named, under the act of December 31st, 1868, and that the said company did not, prior to or since the issuing of the bonds, by its president and a majority of its directors, propose to the defendants that they should take and subscribe for a certain amount of stock at a certain price per share, and pay for the same in the bonds of the county; that the bonds were issued without authority of law and were void, and that the plaintiffs were not *bona fide* holders of them without notice.

2d. The general issue.

To the special plea the plaintiff demurred specially. That the plea amounted to the. general issue was not among the causes assigned for demurrer. On the other, he took issue.

The demurrer was sustained, and the cause tried on the plea of general issue alone, without verification.

On the trial the plaintiffs produced the bonds and coupons, and offered to read the same in evidence. To this the defendants objected, for the reason—

1st. That there was no evidence that the bonds were authorized to be issued by the defendants.

This objection was overruled.

2d. That there was no evidence that the seal annexed was the seal of the probate judge, or of the defendants.

This objection also was overruled; there being no denial of the execution by plea verified by affidavit, as required by section 2682 of the code of 1867, which provides that—

" All written instruments, the foundation of the suit, purporting to be signed by the defendant, his partner, agent, or attorney in fact, must be received in evidence without proof of the execution, unless the execution thereof is denied by plea verified by affidavit."

3d. That there was no revenue stamp on either the bonds or coupons, as it was said by the counsel for the defendant there should have been by the statutes then in force. [But the bill of exceptions disclosed nothing as to what stamps, if any, were on the bonds or coupons.]

This objection also was overruled and the bonds and coupons let in.

On the trial the deposition of Clews, one of the plaintiffs, was read without objection. He said:

" The ninety-three bonds of the county of Chambers were received by my said firm in good faith and for value paid, both I and my firm relying upon the good faith and credit of said county of Chambers that said bonds and the coupons thereto attached would be paid, according to the tenor and effect thereof."

The defendant also offered as a witness Mr. Pennington, the president of the railroad company, who, on cross-examination, said:

" The plaintiffs got the bonds in April, 1870, from J. C. Stan-

ton, to whom they had been transferred on account of advances made by Stanton after the election in the county of Chambers as to the subscription to the stock of said railroad company, but before the actual issue of the bonds, and on an agreement that the bonds should be transferred when issued. The plaintiffs obtained the bonds in April, 1870, under advances made at that time, and an agreement to make future advances, which they have done to about $100,000, and hold the bonds as collateral security for the advances."

The defendant now, to show that the proposition had been made to the county to subscribe *before* the railroad company was fully organized, and while it was simply located, which he alleged it could not legally do under the act of December 31st, 1868, proposed to read a transcript from the records of the Court of County Commissioners of Chambers County, containing the letter of the president of the road (bearing a certain date) making the proposition; the action of the Commissioners' Court of the county ordering an election; and the order of an issue of bonds as upon an election held.

This record of the Commissioners' Court stated that the president of the said railroad company, " as the said railroad is now *located* by said company, proposed in writing that the following application be granted." The bill of exception proceeded:

" The plaintiffs inquired of the defendant whether his transcript was offered in connection with any other evidence, or whether any other evidence was proposed in connection with said transcript. The defendant answered these questions in the negative. The plaintiffs objected to the said transcript being read in evidence, on the ground that it was illegal as well as irrelevant testimony. And the court sustained the objection."

It was also set up that the act of the Alabama legislature, under which the county made the subscription, was unconstitutional; inasmuch as it was an act authorizing the issue of county bonds for a private purpose: a proposition overruled by the court.

Verdict and judgment having been rendered for the plaintiffs, the defendant brought the case here on exceptions to

the admission or rejection of the evidence, as already stated, and for erroneous judgment on the demurrer to the special plea.

*Mr. R. T. Merrick, for the plaintiff in error ; Mr. S. F. Rice, contra.*

Mr. Justice HUNT delivered the opinion of the court.

The special plea was demurred to specially, and the demurrer was sustained by the court.  We have held many times, in relation to bonds of this character, that where the persons appointed by law to certify that the preliminary requisites have been complied with, do so certify, that their certificate is conclusive in favor of the holder who, on the strength of such certificate, pays his money for the bonds without notice of the defect or illegality.*  We have never, however, held that such defect or irregularity could not be set up by the maker of the bonds where the suit upon them was brought by one who had not paid value for them, or who had notice of the defect or irregularity.  In this lies the difficulty with the demurrer to the plea we are considering.  The plea alleges in substance that no legal proposal was made to the county by the railroad in question.  This proposal is undoubtedly a matter of substance.  The statute authorizes a subscription and loan by the county only upon the basis of a proposition in writing, such as it prescribes.  The proposition is a necessary preliminary without which there can be no legal action in issuing the bonds.  Where a plea avers that there was no such proposition, and avers also that the plaintiffs are not *bona fide* holders of the bonds without notice, a case is stated in which the validity of the bonds cannot be sustained by any holding of this court.

While we think there was error in the judgment upon this plea, it seems to have been a harmless one.  The defendants had another plea which covered the same ground.

---

* Grand Chute *v.* Winegar, 15 Wallace, 355; Lynde *v.* The County, 16 Id. 6; Railroad *v.* Otoe, Ib. 667.

In *Chute* v. *Winegar*,* we held that where a plea had been improperly stricken out, but no harm had resulted therefrom, that it was not cause for reversing the judgment.

The parties in this case went to trial on the plea of the general issue, without verification, and a jury was impanelled and sworn to try the issue as joined. The plaintiffs claimed to recover the amount of certain coupons "attached to ninety-three of the bonds of the said corporation." One of the bonds was set forth, purporting that the county of Chambers acknowledged its indebtedness for $1000 as therein stated, the same being recited to be one of a series of bonds issued by the said county of Chambers under authority and in pursuance of an act of the legislature of the State of Alabama.

To this complaint the defendant answered that it did not undertake and promise in manner and form as the plaintiffs had complained against it, and of this it put itself upon the country, and the plaintiff did the like. This issue involved everything that was involved in the special plea. Neither of them involved the *factum* of the bonds. The special plea did not purport to deny their execution, but assuming such execution by the professed agents of the county, alleged that it was without authority of law and that the bonds were void. The general issue did not involve it, as by the practice in Alabama the execution of a written instrument cannot be questioned unless the defendant by a sworn plea denies its execution.†

Both pleas did involve the question of authority. When the plaintiffs alleged that certain persons for the county of Chambers had issued their bonds, that they were the bonds of the corporation, they thereby alleged that the persons issuing them had power and authority to act for the county in issuing them. When the defendant denied that in fact it undertook and promised, as the plaintiffs in their complaint alleged, but not denying that in form its bonds were issued,

---

* 15 Wallace, 355.

† Clay's Digest, 340, § 152; Sorrel *v.* Elmes, 6 Alabama, 706; Lazarus *v.* Shearer, 2 Id. 718.

it denied the authority of the persons who so professed to act in its behalf. The same issue in this respect was presented in the two pleas.

The issue of *bonâ fides* and notice was also presented by each of said pleas. The plaintiffs alleged in their complaint that they were the owners and holders of the bonds and coupons mentioned, " and that they were purchased by them for value before any of them fell due." This allegation was specifically denied in the special plea, where it was averred that the plaintiffs were not *bonâ fide* holders without notice. It was also denied by the general issue, which denied the purchase and holding entirely, as well as the purchase for value before maturity. In assumpsit any matter which shows that the plaintiff never had a cause of action may be proved under the general issue.*

The logical and orderly mode of a trial, where it was intended to investigate the issue we have been considering, would be this: To sustain their claim the plaintiffs produce the bonds and coupons. The execution not being put in issue, this establishes the plaintiff's case, and establishes presumptively that they are holders for value before maturity without notice.† The defendant then produces such proof as it may possess that the plaintiffs were not holders for value, or that they received the coupons after maturity, or that they had notice of the defects alleged. If it establishes either of these points the question of authority in the agent is then open.

The question and the order of proof in these respects would be the same, whether the trial was had upon the general issue or upon the special plea. It seems quite clear that the judgment upon the demurrer to this plea worked no harm to the defendant.

From the evidence given on the trial it would appear that such was the understanding of the parties. This is shown by

---

* Sisson *v.* Willard, 25 Wendell, 373; Brown *v.* Littlefield, 11 Id. 467; Edson *v.* Weston, 7 Cowen, 278.

† Swift *v.* Tyson, 16 Peters, 1; Goodman *v.* Simonds, 20 Howard, 343, 365; Murray *v.* Lardner, 2 Wallace, 110.

what is said in the deposition of Mr. Clews, which was read without objection, and in what the defendant proved by Mr. Kennedy, the president of the railroad company.*

On the trial the plaintiffs produced the bonds and coupons and offered to read the same in evidence. To this the defendants objected, for the reason that there was no evidence that the bonds were authorized to be issued by the defendants, and that there was no evidence that the seal annexed was the seal of the probate judge, or of the defendants. We have already considered this point, and have shown that the objection was not valid for either of the reasons mentioned. There was no issue upon the execution of the bonds.

It was further objected that there was no revenue stamp upon the bonds, as required by the act of Congress. We have no knowledge whether there were stamps of any amount or to what amount upon these papers. The bill of exceptions is silent upon that point. Its assumption in an objection as a ground of objection is no evidence of the fact.†
The fact must appear by the record as an existing fact in the case. If the objector wishes the point to be passed upon by the appellate court, he must take care that the fact shall sufficiently appear in the record. We do not discuss the question farther.‡

The constitutionality of the act of the legislature authorizing the issue of these bonds has been examined by the Supreme Court of Alabama, and the act has been held to be valid.§

These decisions are binding upon us, and we see no occasion to controvert them.

Further evidence in relation to the proposal was offered by the defendant. The defendant's counsel was inquired of whether any other evidence was proposed in connection

---

* See *supra*, pp. 319, 320.

† Railroad Company *v.* Gladmon, 15 Wallace, 401.

‡ See, however, Pugh *v.* McCormick, 14 Wallace, 375.

§ Selma and Gulf Railroad Company, 45 Alabama, 696; Lockhart *v.* City of Troy, and Commissioners Court of Limestone *v.* Rather, 48 Id.

therewith, meaning to inquire, as we understand, whether evidence of want of ownership or of good faith for value, or a knowledge of the defects alleged was intended to be offered. The question was answered in the negative, and the evidence was excluded. We think this ruling was right.

None of the objections are well taken, and the

JUDGMENT IS AFFIRMED.