## TOWNSHIP OF ELMWOOD *v.* MARCY.

1. When the construction of the constitution or the statutes of a State has been fixed by an unbroken series of decisions of its highest court, the courts of the United States accept and apply it in cases before them.
2. Hence this court, conformably to the opinion of the Supreme Court of Illinois, holds that the bonds issued April 27, 1869, by the supervisor and town-clerk of the township of Elmwood, in that State, by way of payment for an additional subscription of $40,000 of stock of the Dixon, Peoria, and Hannibal Railroad Company, over and above the amount authorized by the original charter of said company, are not binding on the township.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The judges of the Circuit Court were divided in opinion, whether, under the facts of this case and the legislation of Illinois applicable to them, there existed power and lawful authority to issue the bonds and coupons in controversy, so as to render them valid and collectible in the hands of the plaintiff below, who is defendant here. Judgment was rendered in his favor, and the cause is brought here for review. From the certificate of division, it appears that the Dixon, Peoria, and Hannibal Railroad Company was incorported March 5, 1867; that prior to Feb. 11, 1869, the road of said company was located in the township of Elmwood; that, at the date last named, an election was called under the provisions of the charter of said company, to be held on March 16, 1869, to determine whether said township would subscribe to the stock of said company, and give its bonds for $35,000, the maximum amount permitted by law; that, five days afterwards, — to wit, on the 16th of February, 1869, — notice was given of another election, not purporting to be in pursuance of said charter, to be held at the same time and place with that aforesaid, to determine whether said township would subscribe to the stock of said company, and issue the bonds for a further sum, over and above the amount authorized by law as aforesaid; that said first-named election resulted in favor of subscribing said $35,000, and the second-named election resulted in favor of an additional subscription of $40,000; that after both said elections were notified, and seven days before they were held, —

viz., on the 9th of March, 1869, — the charter of said company was amended so as to authorize towns in which said road might be *thereafter* located to vote and subscribe $100,000 to its capital stock; also that, thirty-two days after said election, — viz., on the seventeenth day of April, 1869, — the legislature passed a validating act, and that ten days thereafter, on the 27th of that month, the supervisor and town-clerk issued the bonds and coupons contemplated by both elections. That act legalized and confirmed the subscription for $40,000 to the capital stock of the company over and above that for $35,000, which was confessedly made in accordance with the provisions of the original charter. The bonds in suit are part of those issued for the greater sum; and the question is, whether they are binding on the town.

*Mr. H. B. Hopkins, Mr. J. H. Morrow,* and *Mr. E. G. Johnson,* for the plaintiff in error.

The bonds and coupons in question are null and void. *First,* Because their issue was and is inhibited by the Constitution of Illinois, and the laws upon which they depend for their validity are unconstitutional and void. *Second,* Because they were issued in plain violation of the letter and spirit of the acts which purport to authorize their issue. *Wiley et al.* v. *Silliman et al.,* 62 Ill. 170; *Marshall et al.* v. *Silliman et al.,* 61 id. 218.

The act of the Legislature of Illinois of April 17, 1869, attempts to confer the power of municipal taxation upon persons who are not the corporate authorities of the district to be taxed, and is therefore unconstitutional and void. *Harward et al.* v. *The St. Clair and Monroe Levee and Drainage Company et al.,* 51 Ill. 130; *Same* v. *The State of Illinois,* id. 138; *The People ex rel., &c.* v. *Mayor, &c., of Chicago,* id. 17; *The People ex rel., &c.* v. *Soloman, Clerk of Cook County,* id. 37; *Hessler* v. *Drainage Commissioners,* 53 id. 105; *Marshall et al.* v. *Silliman et al.,* and *Wiley et al.* v. *Same, supra.*

It has become a prominent doctrine of this court, that the construction which prevails in the State courts at the time municipal bonds are issued, upon questions touching their validity, enters into and forms a part of them as the settled law of those contracts, although the State court may have adopted

a different ruling.    *Gelpeck* v. *City of Dubuque*, 1 Wall. 175; *Olcott* v. *Supervisors*, *&c.*, 16 id. 678; *Havemeyer* v. *Iowa County*, 3 id. 294; *Mitchell* v. *Burlington*, 4 id. 270; *Christy* v. *Pridgeon*, id. 196.

*Mr. Isaac G. Wilson* and *Mr. Sanford B. Perry* for the defendant in error.

It is apparent, from the phraseology of the act of April 17, 1869, that it does not compel the township to incur an obligation and tax itself without its consent.   So far from conferring a new power, or imposing a debt, it simply cures and legalizes the defective and irregular exercise of an existing power.   *The President and Trustees of the Town of Keithsburg* v. *Frick*, 34 Ill. 405.

It is competent for the legislature to give effect and validity to an election held for the purpose of determining as to the expediency of subscribing for stock, before the passage of a law providing therefor.   *St. Joseph Township* v. *Rogers*, 16 Wall. 644; *McMillan et al.* v. *Lee Co.*, 3 Iowa, 317.

*Wiley et al.* v. *Silliman et al.*, 61 Ill. 218, is squarely in conflict with the decision of this court in *Township of Pine Grove* v. *Talcott*, 16 Wall. 666.

If the words, " and is hereby declared binding on said township, and said $40,000, when subscribed according to the conditions of said vote, may be collected from said township in the same manner as if the said subscription had been made under the provisions of said charter," create a debt, and so are obnoxious to the provisions of the Constitution, they must be disregarded.   It is a familiar principle of construction, that a statute is void only so far as its provisions are repugnant to the Constitution; and that one provision may be void, and the others valid.   Sedg. on Stat. and Const. Law, 2d ed., 413; *Fisher* v. *McGin*, 1 Gray, 22.

The township organization law of Illinois does not declare what officers of a town constitute its municipal officers.

The supervisor and town-clerk are, by the obvious intent of the law, the proper officers to execute all authorized town obligations, except those otherwise specially provided for.   They are, *pro hac vice*, the municipal authorities.   *Marcy* v. *Town of Ohio*, 5 Legal News, 551.

MR. JUSTICE DAVIS delivered the opinion of the court.

The questions arising upon this record were elaborately considered in *Marshall et al.* v. *Silliman et al.*, 61 Ill. 218; and the doctrines there announced were recognized and enforced in *Wiley et al.* v. *Silliman et al.*, 62 id. 170. The last case involved the validity of the identical bonds in question here; but both were, in all substantial particulars, alike. They were bills in equity to enjoin the collection of taxes for the payment of interest; and the court decided that the law of March 9 gave no power to issue the bonds. The opinion affirms, that, when the notice for the vote was posted, the charter of the company only authorized a subscription for $35,000; that the notice under which the vote for the $40,000 was taken was a mere call for a special town-meeting, signed only by twelve voters, which did not seek to follow the provisions of the charter, as, indeed, it could not, since the power under them was already exhausted; and that the proceeding was utterly void. That law is disposed of in these words: "It is true that on the 9th of March, 1869, the legislature passed another act authorizing towns to subscribe $100,000; but a new notice was not given. The charter required twenty days' notice, and only seven intervened between the passage of the act and the vote.

It was insisted, however, that the curative act of April 17, passed after the vote had been taken, gave validity to the bonds. On this ground counsel placed their chief reliance, and to it the court directed its principal attention.

The act was direct and positive, and left nothing to inference. It was intended, so far as the legislature could do it, to make the bonds binding on the township, and collectible in the same manner as if the subscription had been authorized by the charter, and voted for in accordance with its terms. The court held it to be a violation of the fifth section of the ninth article of the Constitution of 1848, which declares "that the corporate authorities of counties, townships, school-districts, cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes, such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same." The decision was placed on the

ground, that, this section having been intended as a limitation upon the law-making power, the legislature could not grant the right of corporate taxation to any but the corporate authorities, nor coerce a municipality to incur a debt by the issue of its bonds. In the opinion of the court, the act was an effort to do both these things, as it attempted to confer that right upon persons who were not by themselves the corporate authorities in the sense of the Constitution, and to compel the town to issue its bonds for railroad stock by declaring a void proceeding to be a valid subscription.

Counsel argued that the act might be treated as vesting an unconditional authority in the supervisors and town-clerk to issue the bonds, and cited *The President and Trustees of the Town of Keithsburg* v. *Frick*, 34 Ill. 405, which recognizes that the legislature can constitutionally bestow upon the trustees of a town the power, if they think proper to exercise it, to subscribe for stock in a railroad company, without requiring the subject to be submitted to a vote of the people. The court, adhering to the doctrines of that case, but distinguishing it from the one under consideration, and referring to *Lovingston* v. *Wilder*, 53 Ill. 302, as an authority in point, said " that the town supervisor and clerk who issued the bonds in controversy do not represent a township as the board of trustees represent an incorporated town, or the common council a city. The supervisor and town-clerk are but a part of the corporation. They have no power of taxation, nor power of themselves to bind the city in any way." But, even if these two officers could be recognized as the corporate authorities, the court observed " that they cannot be said to have voluntarily incurred this debt in behalf of the town. The act gave them no discretion. It declared the subscription shall be binding, and may be collected; and left to the town authorities only the ministerial function of executing the behest of the legislature."

The main doctrines of these cases were not new, but had been settled by the repeated adjudications of the Supreme Court; and that learned tribunal has given no decision at variance with them.

In *Harward* v. *The St. Clair Drainage Company*, 53 Ill. 130, the clause of the Constitution under consideration in *Marshall*

*et al.* v. *Silliman et al.*, and *Wiley et al.* v. *Silliman et al.*, was construed to be a limitation upon the power of the legislature to grant the right of corporate or local taxation to any other persons than the corporate or local authorities of the municipality or district to be taxed. To the same effect are *Hessler* v. *Drainage Company*, 53 id. 105, and *Lovingston* v. *Wilder*, id. 302. *The People ex rel., &c.* v. *The Mayor of Chicago*, 51 id. 17, decides that the legislature could not compel a municipal corporation, without its consent, to issue bonds or incur a debt for a merely corporate purpose.

So far as we can see, the only new point determined in the cases we have first cited is that it is not competent for the legislature to single out the supervisor and town-clerk, and confer on them powers which the Constitution limits to the corporate authorities as an aggregate body.

We are not called upon to vindicate the decisions of the Supreme Court of Illinois in these cases, or approve the reasoning by which it reached its conclusions. If the questions before us had never been passed upon by it, some of my brethren who agree to this opinion might take a different view of them. But are not these decisions binding upon us in the present controversy? They adjudge that the bonds are void, because the laws which authorized their issue were in violation of a peculiar provision of the Constitution of Illinois. We have always followed the highest court of the State in its construction of its own constitution and laws. It is only where they have been construed differently at different times, that, in cases like this, we have adopted as a rule of action the first decision, and rejected the last. This has been done on the ground that rights acquired on the strength of the former decision ought not to be lost by a change of opinion in the court; but, where the construction has been fixed by an unbroken series of decisions, the courts of the United States accept and apply it in cases before them. If a different rule were observed, it is not difficult to see that great mischief would ensue.

There has been no conflict of judicial opinion in Illinois on the controlling question in this suit, but, on the contrary, settled uniformity. As these concurring decisions of the court of last resort in that State are grounded on the construction of

its constitution and statutes, it is the duty of this court to conform to them.   *Judgment reversed, and new trial ordered.*

Mr. Justice Strong, with whom concurred Mr. Justice Clifford and Mr. Justice Swayne, dissenting.

The material facts in this record are few. The two elections were held on the same day (March 16, 1869); one in pursuance of a regular call made Feb. 11, and the other pursuant to a call made Feb. 16, 1869. At the election held under these calls, a subscription for $35,000 was voted, and also an additional subscription of $40,000. The aggregate of the two was $75,000; and a subscription for so much stock having been made in accordance with the popular vote, and certificates therefor having been taken by the supervisor and town-clerk, bonds for the amount were issued. At the time these two subscriptions were voted, there was a provision in the original charter of the railroad company (passed March 5, 1867) authorizing the subscription for $35,000, and there was also in the amendment to the charter (passed March 9, 1869) a provision authorizing an additional subscription not exceeding $65,000. There was, therefore, full legislative authority for the entire subscription of $75,000, and for the issue of bonds for that amount, when the elections were held at which the subscriptions were voted.

But the call for the second vote to determine whether the town would subscribe for the additional $40,000 was irregular in two particulars. It was made before the act of March 9, 1869, was passed, — the act which authorized a subscription larger than $35,000, though the vote was taken afterwards; and the petition for the call was signed by the supervisor, town-clerk, and twelve freeholders (in the mode of calling special town-meetings), instead of being signed by twenty-five legal voters, — the mode pointed out by the act of March 5, 1867. The notice of the election, however, was given twenty days, — the full time prescribed by the act.

These variances from the directions of the statute were irregularities, mere non-compliance with form and mode; nothing more. Authority to subscribe the additional $40,000, if the subscription was approved by a popular vote, existed undenia-

bly *when the vote was cast in favor of the subscription*, though not when the call for the subscription was made. The authority emanated from the legislature. Whether it should be exercised or not was made to depend on the result of a popular vote. The popular vote was the substantial thing. The mode in which the election should be called, as well as the length of time during which notice of it should be given, were formalities required indeed, but they were not of the essence of the power. They were merely ancillary to the main object which the legislature had in view; which was to provide for an expression of the popular sentiment.

But if the departure from the mode of proceeding pointed out by the legislature was only an informality, as it plainly was, it was curable by the same power that prescribed the form; and I think it was cured, in the present case, before the subscription was made, and before the bonds were issued. On the seventeenth day of April, 1869, the legislature passed an act by which it was enacted as follows: —

" That a certain election held in the township of Elmwood, in Peoria County, on the sixteenth day of March, A.D. one thousand eight hundred and sixty-nine, at which a majority of the legal voters in said township, in special town-meeting, voted to subscribe for and take $40,000 of the capital stock of the Dixon, Peoria, and Hannibal Railroad Company, over and above the $35,000 which was on the same day subscribed for and taken in accordance with the provisions of the charter of said company, is hereby legalized and confirmed, and is declared to be binding upon said township; and the said $40,000, when subscribed according to the conditions of said vote, may be collected from said township in the same manner as if the said subscription had been made under the provisions of said charter."

Why this act did not cure all irregularities and all informalities of the election, and why, in connection with the prior acts of May 5, 1867, and March 9, 1869, it did not complete the authority to subscribe for the $40,000 of stock, and to issue the town-bonds therefor, I cannot discover. A retrospective statute curing defects in legal proceedings, and even in contracts, is of frequent occurrence, and, unless expressly forbidden by constitutional provisions, is effective. Irregular proceedings in courts,

or in the organization or elections of corporations, and irregularities in the votes or other action of municipal corporations, by means of which a statutory power has failed of due and regular execution, have often been cured by such legislation; and the power irregularly or informally executed has been declared well exercised. Such statutes are held to be constitutional. The principle asserted is, that if the thing wanting, or which failed to be done, and the want or failure of which constitutes the defect or irregularity in the proceedings, is something which the legislature might have dispensed with by prior statute, it is within the power of the legislature to dispense with it by subsequent enactment. Cooley, Const. Lim. 371, and cases there cited. Illustrations of this principle abound. Void contracts have thus been validated. So have void acknowledgments by married women, and, repeatedly, contracts by municipal corporations, which, when made, were in excess of their authority. Such retrospective laws are supported, when they impair no contract or disturb no vested right, but only vary remedies, or cure defects in proceedings otherwise fair. They have their foundation in equity and in justice. In *St. Joseph Township* v. *Rogers*, 16 Wall. 666, where it appeared that the election at which the subscription was approved was held before the passage of the law authorizing the subscription, and not after, as in the present case, this court said, " Argument to show that defective subscriptions of the kind may, in all cases, be ratified where the legislature could have originally conferred the power, is certainly unnecessary, as the question is authoritatively settled by the decisions of the Supreme Court of the State (Illinois) and of this court in repeated instances." And again : " Mistakes and irregularities are of frequent occurrence in municipal elections, and the State legislatures have often had occasion to pass laws to obviate such difficulties. Such laws, when they do not impair any contract or injuriously affect the rights of third persons, are never regarded as objectionable, and certainly are within the competency of legislative authority."

It is argued, however, that the validating act of April 17, 1869, is unconstitutional because it compels a municipal corporation to contract and pay a debt without its consent. It is said the election by which it was voted to subscribe was a

nullity, and, therefore, that there never was any consent to the subscription. The argument is founded upon a complete misconception of the facts and of the law. The statute was in no just sense an act to confer new power, or to impose a debt. It was what it purports to be, — an act to cure the defective execution of a power already granted. That such an act creates no rights, confers no authority, and imposes no new duty, is palpably plain. It might as well be argued that an act curing defective acknowledgments of a deed by a married woman compels her to make a conveyance. It cannot be said that there was no consent to the subscription. True, the consent was not according to the formalities required when it was given; but it was none the less a substantial assent to the proposition to subscribe. The validating statute, therefore, was not an overriding of the will of the voters: it was rather an act to give effect to an informally expressed consent.

The position here taken on behalf of the plaintiff in error is as novel as it is unsound. It is, in effect, to deny the power of a legislature to pass retrospective statutes in any case for the purpose of curing the irregular or defective execution of a power by municipalities, a power never before denied. In *The President and Trustees of the Town of Keithsburg* v. *Frick*, 34 Ill. 405 (decided in 1864), it was ruled, that if a town subscribes to the stock of a railroad company, and issues its bonds therefor, without legislative authority therefor, it is competent for the legislature to legalize and validate what the town has done. .There the town, having no authority to take stock, had held an election irregularly, and had voted to subscribe for $20,000 and issue bonds. A subsequent act of the legislature validated the subscription, and the act was sustained by the Supreme Court of the State. It was not thought then that the confirming act compelled the town to contract a debt without its consent. This case of *Keithsburg* v. *Frick* was the declared law of the State when the bonds of the plaintiff in error were issued. It was in full accord with the decisions made in other States. *McMillan et al.* v. *Lee County*, 3 Iowa, 317.

It matters not, then, that the Supreme Court of Illinois changed its ruling in 1871, as in the cases of *Marshall et al.* v. *Silliman et al.*, 61 Ill. 218, and *Wiley et al.* v. *Silliman et al.*, 62 id. 170.

This was after the bonds had been issued. The purchaser had a right to rely upon the law as declared by the court when he purchased, or when the bonds were issued, especially as it was in accordance with the former decisions of the same court, and with what has been decided in every other State, so far as we know, and by this court. Then it had never been held that the legislature could not authorize the supervisor and town-clerk to execute township bonds. True, it had been decided that the power could not be conferred upon commissioners or persons who were not officers of the township, and for the reason that they were not the corporate authorities, but were persons having no interest in or control over the township affairs, — a reason inapplicable to the township surpervisor and clerk; and certainly it had never been decided that an act of the legislature validating an irregular election or an irregular exercise of power by the officers of a municipal corporation was unconstitutional and inoperative. The decisions made in 1871, after these bonds were issued, are, in my judgment, the assertion of new doctrine, which this court is not bound to follow, especially when it leads to such injustice as the present decision exhibits.

For these reasons, I dissent from the judgment of the court.