LOUISVILLE & N. R. CO. v. LANSFORD.

(Circuit Court of Appeals, Fifth Circuit. May 8, 1900.)

No. 896.

1. RAILROADS—NEGLIGENCE—PERSONAL INJURY—EXEMPLARY DAMAGES.
   Under Code Ala. 1896, § 27, derived from an act entitled "An act to prevent homicides," and providing that, in an action by a personal representative for negligently causing the death of his intestate, plaintiff may recover "such damages as the jury may assess," the damages recoverable by plaintiff in an action against a railroad company for causing the death of a passenger on one of its trains, by the falling of a bridge, are punitive and exemplary.

2. COURTS—CONSTRUCTION OF STATUTES—RULE OF STATE COURT BINDING.
   Code Ala. 1896, § 27, providing that, in actions for negligently causing the death of another, plaintiff may recover "such damages as the jury may assess," having been construed by the supreme court of Alabama as awarding exemplary damages, and been declared by that court to be constitutional, its decisions are binding upon the federal courts.
   Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern Division of the Northern District of Alabama.

W. A. Walker (Mitchell A. Porter and Wm. M. Walker, on the brief), for plaintiff in error.

Frank S. White and A. O. Lane (Felix Blackburn, on the brief), for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge. Wiley G. Lansford, as the administrator of the estate of L. W. Martin, deceased, brought this action in the city court of Birmingham, Ala., against the Louisville & Nashville Railroad Company. The defendant, being a Kentucky corporation, removed the suit to the circuit court of the United States for the Southern division of the Northern district of Alabama. The action was for $40,000, as damages for the alleged wrongful death of the plaintiff's intestate, a passenger on the defendant's passenger train. The evidence tended to show that the defendant company was engaged in operating railroads, as a common carrier of freight and passengers; a part of its line running from Birmingham to Blockton, Ala. On the line was a long bridge, about 110 feet high, commonly called the "Cahawba River Bridge." On the 27th of December, 1896, Martin took passage on one of the defendant's trains as a passenger from Birmingham to Blockton. When the train was passing over the bridge, it collapsed and carried part of the train with it into the bed of the river; falling about 110 feet. The train was demolished, and the plaintiff's intestate was killed. The part of the train which fell was destroyed by fire. The body of the plaintiff's intestate was found in the wreckage and was identified. The defendant offered evidence tending to show that the bridge was strong and in good condition. The plaintiff offered evidence in rebuttal tending to show that the timbers in the bridge at the place where the train went through were in a rotten condition, and that some of the iron of which the bridge was composed had old breaks in it, and that the bridge would sway six inches from one side to the other when trains were passing over it. The question of negligence vel non was left to the jury. The jury found for the plaintiff, and assessed his damages at $7,662.50. Judgment was entered on the verdict, and this writ of error was sued out to reverse the judgment.

At the request of the plaintiff the court charged the jury that the measure of damages in the case was punitive and exemplary. The court instructed the jury to the same effect in the general charge. To the giving of these instructions the defendant excepted. The question of the correctness of these charges is here raised by several assignments of error.

At common law no action would lie for a wrongful injury causing death. The right of action in this case, therefore, is entirely dependent upon a statute. The following is the statute under which the suit is brought:

"Action for Wrongful Act, Omission, or Negligence Causing Death. A personal representative may maintain an action, and recover such damages as the jury may assess, for the wrongful act, omission, or negligence of any person or persons, or corporation, his or their servants or agents, whereby the death of his testator or intestate was caused, if the testator or intestate could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death; such action shall not abate by the death of the defendant, but may be revived against his personal representative; and may be maintained

though there has been no prosecution, or conviction, or acquittal of the defendant for such wrongful act, or omission, or negligence; and the damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions. Such action must be brought within two years from and after the death of the testator or intestate." Code Ala. 1896, § 27.

The question here presented for our consideration is whether the damages to be assessed under this statute are punitive or merely compensatory. As indicating the purpose and meaning of the legislature of Alabama in conferring the right of action for injuries causing death, it should be noted that the titles of the several acts on the subject indicate that its purpose was to prevent homicides. The act authorizing actions for wrongful injuries causing death, approved February 21, 1860, is entitled "An act to prevent homicides." Acts Ala. 1859–60, p. 42. This act was subsequently repealed. The section of the Code under consideration is derived from the act of February 5, 1872, which was also entitled "An act to prevent homicides." Acts Ala. 1871–72, p. 83. The act as originally passed provided that the personal representative of the person whose death was caused by the wrongful act might recover "such sum as the jury deem just." As the act now appears in the Code, it allows a recovery of "such damages as the jury may assess." The change is immaterial. Railroad Co. v. Freeman, 97 Ala. 289, 11 South. 800. In 1877 the question came before the supreme court of Alabama as to the proper construction of this statute, on the question of the measure of damages. The action was by the administratrix for the recovery of damages for the killing of her intestate. Judge Stone, delivering the opinion of the court, said:

"Charge 4 fixes an erroneous measure of damages, and was rightly refused on that account, although in other respects it may have asserted correct legal principles. Lacerated feelings of surviving relations, and mere capacity of deceased to make money if permitted to live, do not constitute the measure of recovery under the act of February 5, 1872. Prevention of homicide is the purpose of the statute, and this it proposes to accomplish by such pecuniary mulct as the jury 'deem just.' The damages are punitive, and they are none the less so in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad 'to prevent homicides.'" Railroad Co. v. Shearer, 58 Ala. 672, 680.

The same question was again before the Alabama supreme court at the December term, 1877, and the court held—

"That the purpose and result of the suit therein provided were not a mere solatium to the wounded feelings of surviving relations, nor compensation for the lost earnings of the slain. We think the statute has a wider aim and scope. It is punitive in its purpose,—punitive of the person or corporation by which the wrong is done, to stimulate diligence and to check violence, in order thereby to give greater security to human life; 'to prevent homicides.' And it is none the less punitive because of the direction the statute gives to the damages recovered. The damages, 'tis true, go to the estate of the party slain, and, in effect, are compensatory; but this does not change the great purpose of the statute,—to prevent homicides. Preservation of life —prevention of its destruction by the wrongful acts or omission of another —is the subject of the statute, and all its provisions are but machinery for carrying it into effect." Railroad Co. v. Sullivan, 59 Ala. 272, 278.

An examination of these two cases will show that neither of them involves facts which, in the absence of the statute, would have required the assessment of damages punitive in character. The cases

are both distinctly constructions of the statute. In 1892 the question was again before the supreme court of Alabama. Judge McClellan (now chief justice) delivered the opinion of the court. The opinion is without dissent, and cites approvingly the construction theretofore given to the statute. The court said:

"The conception of a recovery of damages as a pecuniary mulct—a punishment of the wrongdoer as a retribution for the wrong, and deterrent of its repetition—is the leading. indeed the sole, idea upon which the conclusion was reached. Compensation is referred to only as a fortuitous result of the imposition of the punishment,—a thing which ensued not because of any intent of the lawmakers that it should ensue, and not because a predicate for it was necessary to the assessment of damages, or exerted any influence in determining the amount of the verdict, but only because, the damages having been assessed alone upon a consideration of the culpability of the defendant's act or omission, wholly regardless of the actual loss or injury suffered thereby, they constituted a fund which the statute distributed to the next of kin of the deceased; and this whether or not his next of kin would have been at all benefited by his continued life, or were to any extent damnified by his untimely death. * * * The damages recoverable being punitive and exemplary in all cases under the statute,—punitive of the act done, and intended by their imposition to stand as an example to deter others from the commission of mortal wrongs, or to incite to diligence in the avoidance of fatal casualties,—the purpose being the preservation of human life, regardless of the pecuniary value of a particular life to the next of kin under statutes of distribution, the admeasurement of recovery must be by reference alone to the quality of the wrongful act or omission, the degree of culpability involved in the doing of the act, or in the omission to act as required by the dictates of care and prudence, and without any reference to or consideration of the loss or injury the act or omission may occasion to the living." Railroad Co. v. Freeman, 97 Ala. 289, 293, 294, 11 South. 800.

In Railroad Co. v. Sanders, 98 Ala. 293, 13 South. 57, the court speaks of the "fixed construction" of this statute (the "homicide act"), and incidentally approves of the rule established as to the measure of damages. In 1895, construing this statute, the court held that the damages recoverable are entirely punitive, and that evidence tending to show actual pecuniary loss by reason of the death of the intestate is irrelevant and inadmissible. Buckalew v. Railroad Co., 112 Ala. 146, 148, 20 South. 606.

The last Alabama case on the subject to which our attention is called cites approvingly the preceding cases. The supreme court (Judge Coleman delivering the opinion) held that:

"In an action brought by an administrator, under the statute, to recover for the alleged negligent killing of his intestate, who was a child, the damages recoverable are entirely punitive; and therefore evidence of loss of services, or of mere pecuniary loss, and mental suffering on the part of the parents of the deceased child, is immaterial, irrelevant, and inadmissible." Railroad Co. v. Burgess, 116 Ala. 509, 510, 22 South. 913.

In Matthews v. Warner, 29 Grat. 570, 26 Am. Rep. 396, the court construes the Virginia statute allowing actions for wrongful injuries causing death. The statute allowed "such damages as to the jury seem fair and just." Exemplary damages were allowed. Similar statutes in other states have received the same construction. But where the statutes use the expression "just compensation," or where the damages are to be assessed for "pecuniary injuries resulting from the death," the damages are compensatory only. Railroad Co. v.

Barron, 5 Wall. 90, 18 L. Ed. 591. An examination of the statutes of the several states will usually show the reasons for the apparent conflict in the decisions on the subject. See article on "Death by Wrongful Act," 8 Am. & Eng. Enc. Law (2d Ed.) p. 851; Tiff. Death, Wrongf. Act, §§ 153, 155.

But it is not necessary to pursue this line of investigation. We have before us a statute, enacted in 1872, which has been uniformly construed by the court of last resort in Alabama as awarding exemplary damages. The statute, after it received such construction, has been re-enacted in the Code of Alabama of 1886, and again in the Code of 1896. It has been formerly declared constitutional. Railroad Co. v. Freeman, 97 Ala. 289, 11 South. 800. Statutes like this are condemned or applauded according to the bent of the mind of the commentator. The policy or propriety of the legislation is not for us to consider in this case. We have only to deal with the question of the construction of the statute. The opinions already quoted leave no doubt but that the Alabama supreme court construes the statute in question as allowing punitive or exemplary damages. Is this court bound by such construction? We must, to begin with, hold the act valid and constitutional, because the decision of the highest court of a state that an act of a state is not in conflict with the provisions of the constitution is conclusive on the federal courts. Gut v. Minnesota, 9 Wall. 35, 19 L. Ed. 573; Chambers Co. v. Clews, 21 Wall. 317, 324, 22 L. Ed. 517. The supreme court has uniformly held that, where the construction of a statute given by the highest court of a state is uniform and is settled, it is binding on the courts of the United States as a rule of decision. Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289; Post v. Supervisors, 105 U. S. 667, 26 L. Ed. 1204; Sioux City T. R. & W. Co. v. Trust Co. of North America, 173 U. S. 99, 107, 19 Sup. Ct. 341, 43 L. Ed. 628; 1 Ind. Dig. U. S. Sup. Ct. Rep. p. 530, § 390, and cases there cited. In one of the many cases sustaining this view the court said:

"In all cases where there is a settled construction of the laws of a state by its highest judicature, established by admitted precedent, it is the practice of the courts of the United States to receive and adopt it without criticism or further inquiry." Pease v. Peck, 18 How. 595, 598, 15 L. Ed. 518.

It may be true that the question here considered, in the absence of an express statute regulating the subject, would be one not of local law, but of general jurisprudence, upon which this court would exercise its own judgment, uncontrolled by the decisions of the courts of the several states. Railway Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. 261, 37 L. Ed. 97. The case last cited did not involve the construction of a statute. It was a suit for an alleged illegal arrest of a passenger by the conductor of one of the defendant's trains,— an act which the defendant had not authorized or ratified. In the case at bar the right of action itself is conferred by statute, and that statute expressly provides that the plaintiff "may recover such damages as the jury may assess." The injury would be the same in all cases, for the suit is brought only for injuries which have caused death. The statute fixes no minimum or maximum sum. Its purpose, as shown by its title when first enacted, was to prevent homi-

cides. The construction which the supreme court of Alabama has placed on the statute is sustained, as we have seen, by the construction of similar statutes in other states; but if we were inclined to give the statute a different construction, if it were an original question, we would be constrained to follow the Alabama decisions. In Township of Elmwood v. Marcy, 92 U. S. 289, 294, 23 L. Ed. 710, Mr. Justice Davis, in delivering the opinion of the court, said:

"We are not called upon to vindicate the decisions of the supreme court of Illinois in these cases, or approve the reasons by which it reached its conclusions. If the questions before us had never been passed upon by it, some of my Brethren who agree to this opinion might take a different view of them. But are not these decisions binding upon us in the present controversy? They adjudge that the bonds are void because the laws which authorized their issue were in violation of a peculiar provision of the constitution of Illinois. We have always followed the highest court of the state in its construction of its own constitution and laws."

There are numerous assignments of error (68 in all), relating to the organization of the jury, the admission of evidence, the argument of counsel, and the charge of the court. We have examined them all, and believe that the only material question in the case is the one considered in the opinion. We do not find any error in the record to the injury of the plaintiff in error. The judgment of the circuit court is affirmed.

PARDEE, Circuit Judge (dissenting). As this action was tried in the lower court, and as presented in this court, it is a civil action to enforce a criminal law of the state of Alabama, wherein the guilt of the defendant was determined by the preponderance of evidence, and wherein the rules and presumptions pertaining to contracts for the safe carriage of passengers for hire were applied, and, practically and substantially, the burden of proving innocence thrown on the defendant. The trial judge charged the jury that if they believed from the evidence that the plaintiff's intestate, Martin, was sitting in a seat in defendant's passenger train when the bridge across the Cahawba river collapsed, this raised the presumption that said Martin was a passenger on said train. He then charged the jury that if they believed that Martin was a passenger on the defendant's train at the time of the wreck, and was killed in the wreck, the prima facie presumption was that his death was the result of the defendant's negligence. He further charged the jury that if they believed from the evidence that the plaintiff's intestate, Martin, was a passenger on the defendant's train, and was killed by the falling of the bridge, the burden of proof was upon the defendant to show to the reasonable satisfaction of the jury that it exercised the highest degree of care in and about the construction, erection, and keeping in repair of the bridge, and in and about the operation of the train in which the plaintiff's intestate was riding, and that, if the evidence failed to satisfy the jury in these respects, the jury were bound to find a verdict for the plaintiff. So it seems that, in this quasi criminal case, the jury were first to presume, from the mere fact that Martin was sitting in a seat in defendant's passenger train, that he was a passenger, and, next, from the fact that he was a passenger on the

train and was killed, to presume that he was killed through the defendant's negligence; and thus was thrown upon the defendant the burden of proving that it exercised that high degree of care which is required of the carrier of passengers for hire.

In his general charge to the jury, the trial judge instructed the jury:

"If your verdict is for the plaintiff, you will consider the amount of that verdict, and base it solely, as the decisions of the supreme court of Alabama have said, according to the degree and amount of negligence proven against the defendant, the railroad company. If the negligence was slight, the verdict should be slight. If the negligence was great and culpable, the verdict should be large. If halfway between the two, the verdict should be accordingly."

And then, at the request of the plaintiff, the court specially gave this charge:

"The court charges the jury that the measure of damages in this case is punitive and exemplary, and, if they should find from the evidence that the defendant is liable, it is their duty to impose such damages by way of punishment as will, in their judgment, prevent defendant in future from negligence causing the death of its passengers, or such as will prevent other railroads engaged in like business from being guilty of negligence which would cause the death of their passengers."

If the general charge was correct, the special charge was incorrect, and vice versa, with the inevitable result of misleading the jury. As I understand it, the special charge was incorrect and unwarranted. It asserts that it was the duty of the jury to impose such damages as would, in their judgment, prevent the defendant in future from negligence causing the death of its passengers, or such as would prevent other railroads engaged in like business from negligence which would cause the death of their passengers. It was a direct invitation and instruction to the jury to give excessive damages as a punishment in a case where, of necessity, punishment must be vicarious; for it cannot be ignored that the defendant's liability results entirely ·from its responsibility for the negligent acts and omissions of its servants, and that, no matter how much the defendants may be mulcted, the punishment does not reach, nor can be made to reach, the really guilty parties; for no punishment imposed upon a railway corporation, no matter how severe, can be effectual to keep its many servants guiltless of negligence for all time,—much less, the servants of all corporations engaged in similar undertakings. In Railroad Co. v. Freeman, 97 Ala. 294, 11 South. 801, cited in the opinion of the court to show that the law of Alabama "to prevent homicides" is constitutional, the supreme court of Alabama lays down the rule of damages as follows:

"The admeasurement of the recovery must be by reference alone to the quality of the wrongful act or omission, the degree of culpability involved in the doing of the act, or in the omission of the act as required by the dictates of care and prudence."

I understand that to mean that the recovery is to be measured by the degree of turpitude involved in the wrongful act. The character of the act is the test, and not the amount required to prevent other parties from committing like acts. In the same case it was held to be within the province of the jury to find only nominal damages. The court said:

"We do not doubt that it would be competent for the jury in actions like this to return a verdict for nominal damages only. The negligence of a defendant, while sufficient to make out a technical cause of action, and plaintiff's right to recover judgment, might yet be so slight, or so characterized by mitigating circumstances, as that the jury would be justified in the imposition of such punishment only as is involved in the assessment of merely nominal damages, since there is no question of compensation or actual damages to be considered."

In the instant case the trial court specially instructed the jury that, if they found the defendant liable, it was their duty to impose such damages by way of punishment as would prevent other railroads from being guilty of negligence. Of course, the courts have little to do with the policy of the laws enacted by the legislature of the state of Alabama, and it may be that we are expected to follow the construction given by the supreme court of the state; but, under a law like the act "to prevent homicides," I do not think that we should go further than the supreme court of Alabama has gone in inflicting vicarious punishment. In my opinion, the judgment of the circuit court should be reversed, and the cause remanded, with instructions to award a venire de novo.