[Richmond & Danville R. R. Co. v. Freeman.]

# Richmond and Danville Railroad Company *v.* Freeman.

*Action Against Railroad Company for Damages, by Administrator, for the Unlawful Killing of Plaintiff's Intestate Under Section 2589 of the Code of 1886.*

1. *Measure of damages under § 2589 Code 1886.*—§ 2589 is punitive in its nature and requires the jury to assess, without regard to actual compensation, such damages as they may deem necessary to effect the punishment of the defendant for the wrongful act by which the death of plaintiff's intestate is caused.

2. *§ 2589 Code of 1886 constitutional.*—As § 2589, Code 1886, does not interfere with the constitutional guarantees with reference to arrest, conviction and punishment in criminal cases under the statute is not unconstitutional.

3. *Charge invading province of the jury.*—Upon the trial of an action brought under § 2589, Code 1886, it is an invasion of the province of the jury to charge that they might assess only nominal damages.

4. *Company liable for death when § 1145, Code 1886, not complied with.*—When death ensues from a collision of trains at a crossing of two railroads, and one of said trains is not stopped on approaching such crossing as required by § 1145, Code 1886, the company running said train—in the absence of contributory negligence—is liable for the death.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES B. HEAD.

This action was brought by the appellee, William Freeman, as administrator of the estate of John T. Freeman, deceased, for the wrongful killing of his intestate. The undisputed evidence shows that plaintiff's intestate was a brakeman on the Birmingham Mineral Railroad, and that while the train on which he was brakeman was crossing the track of the defendant's road, a train operated by the defendant collided with the Birmingham Mineral train and killed plaintiff's intestate. The evidence further shows that defendant's train did not stop before running into the train of the Birmingham Mineral Railroad at the crossing.

The court declining to review the exceptions taken to evidence renders it unnecessary to set out the evidence excepted to.

The defendant duly excepted to a part of the oral charge given by the court, which part of said charge so excepted to, is copied in the opinion, and separately excepted to the

[Richmond & Danville R. R. Co. v. Freeman.]

refusal of the court to give each of the following charges requested—in writing—by it.

(1). "Even though the jury should find the defendant guilty, they would not be bound to assess punitive damages against the defendant. It is within their sound discretion whether or not to assess punitive damages; and, in their sound discretion, they may limit their finding to the actual damages sustained by and through the death of the plaintiff's intestate."

(2). "Under the evidence in this case, the jury may, in their sound discretion and guided by the evidence, if they should find for the plaintiff, find only nominal damages."

(3). "In case of a collision between two railroad trains at a railroad crossing, the law presumes, in the absence of proof to the contrary, that such collision occurred through the contributory concurrent negligence of the person in charge of such train, and in this case, the plaintiff's intestate, being an employe of one of the colliding trains, and one of the crew in charge of said train, the burden of proof is on plaintiff, to show that the collision occurred without negligence on the part of those in charge of the train on which plaintiff's intestate was riding."

(4). "The defendant cannot be made liable in this case for any species of negligence if at all, except for a failure on the part of those in charge of the defendant's train to use such means at hand as were reasonably necessary to avoid an accident at the crossing. And you cannot look to or consider the fact that the engine was not provided with sand, or any defect in the condition of the brakes or cars, in determining the question of negligence on the part of the defendant."

(5). "The jury cannot look to or consider the steepness of the grade of the track or the general condition of the track approaching the crossing or its condition as constructed, that is to say, whether or not it was in a defective condition as an element of negligence in this case."

(6). "There is no element or question of negligence in this case except such negligence as the evidence may show that those in charge of defendant's train were guilty of which contributed approximately to the death of (plaintiff's intestate.)"

(7). "The jury may, in their sound discretion, and guided by the evidence in the case, confine the recovery in this case, if they should find for the plaintiff, to the actual damages suffered by the estate of the plaintiff."

(8). "The jury, may, in their sound discretion and guided

Vol. 97.

[Richmond & Danville R. R. Co. v. Freeman.]

by the evidence in the case, confine the recovery in this case, if they should find for the plaintiff to the actual damages suffered by the surviving relatives or next of kin of deceased who would be entitled, under the laws of Alabama, to share in the distribution of the estate of the plaintiff's intestate."

(9). "In this case, the jury are not absolutely bound in duty to assess punitive damages against the defendant in case they find a verdict for the plaintiff."

The defendant prosecutes this appeal and assigns the rulings of the lower court on evidence, and upon charges given and refused as error.

(1). JAMES WEATHERLY, for appellant.—The jury were not confined solely to the actual damages nor to punitive damages; actual damages may be given, and the jury were not absolutely bound to assess punitive damages, and might assess only nominal damages.—*Oldfield v. R. R Co.*, 14 N. Y. 310; *S. & N. R. R. Co. v. Sullivan*, 59 Ala. 272 to 278; *S. & M. R. R. Co. v. Shearer*, 58 Ala. 672; *O'Shields v. R. R. Co.*, 90 Ala. 29.

(2). The act is unconstitutional.—Section 8 & 9 of the Bill of Rights; Clark Cr. Law. Sec. 2 Chap. 1. *Ib.* Sec. 405; Secs. 3729, 3730, 3731 and 3733 Criminal Code of Ala.; *Noles v. State*, 24 Ala. 672, 691; *Schwartz v. State*, 37 Ala. 466 top of page.

Wood's Mayne on Dam. 58 note; *Wilkerson v. Searcy*, 76 Ala. 181; *Arnold v. R. R. Co.*, 84 Ala. 169, 170.

(3). The statute being in derogation of the common law, should be strictly construed.—*Ryan v. Couch*, 66 Ala. 244; *Cook v. Meyer*, 73 *Ib.* 580; *Lanier v. Youngblood*, 73 *Ib.* 587; *Grooms v. Hannon, Ib.* 510; (4), being also to some extent penal it should be strictly construed.—*Grooms v. Hannon*, 59 Ala. 510; *Betts v. Taylor*, 8 So. Rep. 564; *Mangham v. Cox*, 29 Ala. 81.

(1). SMITH & LOWE, for appellee.—The failure of train to stop within a hundred feet of the crossing fixed the guilt of negligence on the defendant.—Code 1886, § 1145.

(2). The plaintiff was entitled to the affirmative charge and any erroneous rulings of the court as to plaintiff's right of recovery was without injury to the defendant.—*G. P. R. R. Co. v. Blanton*, 84 Ala. 154.

(3). There was no error in permitting witnesses to testify to their opinions as to the facts testified to.—*Kansas City Railroad Co. v. Crocker*, 95 Ala. 412; *Elyton Land Company v. Mingea*, 89 Ala. 521.

[Richmond & Danvflle R. R. Co. v. Freeman.]

(4). Damages given by statute in cases like this are punitive.—*S. & N. A. R. R. Co. v. Sullivan*, 59 Ala. 272.

(5). The jury could not assess only nominal damages. *Stanton v. Railway Co.*, (Covn.) 21 Am. State Rpt. 116.

McCLELLAN, J.—This is an action under section 2589 of the Code, sounding in damage for the death of plaintiff's intestate alleged to have been caused by the negligence of the defendant. The question most elaborated by counsel for appellant, arises on the charge of the trial court as to the measure of damages and the mode of their assessment by the jury. The charge in this behalf was the following : "The measure of damages provided by this statute under which this action was brought is left to the sound discretion of the jury ; the statute is punitive in its aim and purpose, intended to punish defendants for wrongfully causing the death of other persons, and the jury can give such damages in this case as they may deem just, provided that they believe the defendant guilty under the evidence ; and in arriving at the amount of their verdict, they should consider what was necessary to punish the defendant and should not consider any actual damages that might have been sustained by surviving relations, as actual damages are not contemplated by the statute as a part of the recovery in such cases." The statute referred to as originally enacted, February 5, 1872, was construed by this court in the cases of *Savannah & Memphis R. R. Co. v. Shearer*, 58 Ala. 672 ; and *South and North Ala. R. R. Co. v. Sullivan, Admr.* 59 Ala. 272, in respect to the measure of damages recoverable under it. In the former of these cases, it was said : "Lacerated feelings of surviving relatives, and mere capacity of deceased to make money if permitted to live, do not constitute the measure of recovery under the act of February 5, 1872. Prevention of homicide is the purpose of the statute, and this it proposed to accomplish by such pecuniary mulct as the jury "deem just." The damages are punitive and they are none the less so, in consequence of the direction the statute gives to the damages when recovered. They are assessed against the railroad "to prevent homicide."—*S. & M. R. R. Co. v. Shearer, supra.* And in the latter case, the court after restating with approval the substance of what was said in *Shearer's case*, and quoted above, proceeds : "It, (the act of February 5, 1872,) is punitive in its purposes. Punitive of the person or corporation by which the wrong is done, to stimulate diligence and to check violence, in order thereby to give greater

security to human life ; "to prevent homicide."    . . . . .
The damages, 'tis true, go to the estate of the party slain,
and, in effect, are compensatory ; but this does not change
the great purpose of the statute—"to prevent homicide."
Preservation of life—prevention of its destruction by the
wrongful act or omission of another—is the subject of the
statute ; and all its provisions are but machinery for carry-
ing it into effect."—*S. & N. Ala. R. R. Co. v. Sullivan, supra.*
Neither of these cases involved facts which, aside from the
purely punitive character of the statute as construed in them,
would have authorized the imposition of exemplary damages
as the law in that regard has been declared by this court.
*Ga. Pac. R'y Co. v. Lee,* 92 Ala. 262.   That the court did
not reach its conclusion as to the nature of the damages
recoverable from any conviction that the defendants were
guilty of such gross negligence, as that term has come to
be understood in our books, as amounted to willfulness,
wantonness or the like, is, we think, clear on the language
employed.   The conception of a recovery of damages as a
pecuniary mulct, a punishment of the wrong doer as a re-
tribution for the wrong and deterrent of its repetition—
is the leading, indeed the sole idea upon which the con-
clusion was reached.   Compensation is referred to only as
a fortuitous result of the imposition of the punishment—
a thing which ensued not because of any intent of the law
makers that it should ensue and not because a predicate
for it was necessary to the assessment of damages, or
exerted any influence in the determining the amount of the
verdict, but only because the damages having been assess-
ed, alone upon a consideration of the culpability of the
defendant's act or omission, wholly regardless of the actual
loss or injury suffered thereby ; they constituted a fund
which the statute distributed to the next of kin of the de-
ceased and this whether or not his next of kin would have
been at all benefited by his continued life, or were to any
extent damnified by his untimely death.   That this was the
view actuating the court to the conclusion in *Shearer's* and
*Sullivan's* cases, is further demonstrated by the language
of the judge who wrote the opinions in those cases in the
subsequent case of *East Tenn. Va. & Ga. R. R. Co. v. King,*
81 Ala. 177, 183.   It appears to have been insisted in
that case that the rule as to the measure and elements of
damages which had been declared under the act "to pre-
vent homicide," should obtain in cases of injury not re-
sulting in death, but Chief Justice Stone declared that that
act, then constituting Section 2641 of the Code of 1876,

did not apply and hence that punitive damages were not recoverable as a matter of course on proof of wrong done, as under that statute, but that to the contrary in such case unlike one arising under the statute "the measure of recovery, whether simply compensatory or punitive—sometimes called exemplary—depends on the degree of negligence, whether simple or gross," the necessary implication and clear inference being that punitive damages were recoverable under the statute for any degree of negligence, or more, accurately speaking, for negligence as well as for wantonness. willfulness and the like.

The damages recoverable being punitive and exemplary in all cases under the statute—punitive of the act done and intended by their imposition to stand as an example to deter others from the commission of mortal wrongs or to incite to diligence in the avoidance of fatal casualties—the purpose being the preservation of human life regardless of the pecuniary value of a particular life to next of kin under statutes of distributions, the admeasurement of the recovery must be by reference alone, to the quality of the wrongful act or omission, the degree of culpability involed in the doing of the act or in the omission to act as required by the dictates of care and prudence. and without any reference to, or consideration of the loss or injury the act or omission may occasion to the living. Such is the construction given by this court to the act "to prevent homicide," and as thus construed, it is manifest that the charge set out above is a sound exposition of the elements and measure of damages recoverable under the act unless there has been such modification of the statute in its recent codification as necessitates a different interpretation, or unless the act as thus construed is violative of the organic law, as counsel insist.

Has the statute been changed in the respect under consideration since the decision in the *Shearer* and *Sullivan* cases? We think not. It has not in the present Code the title which it bore as an original enactment, "to prevent homicide." But in the codification of statutes it is usual to omit their titles, and such omission have never been supposed to alter their meaning. Moreover, this title was omitted from the Code of 1876, and the statute without it and considered only as a section of codified laws with an index head line was, as we have seen, given the same interpretation as had been put upon it when its purpose was blazoned in its caption.—*E. T. Va. & Ga. R. R. Co. v. King, supra.* And if the title served in this first instance to fix the intent of the law makers it is a fair presumption that

this intent follows the statute in all subsequent codifications so long as the words employed by the legislature to effectuate that intent are not materially changed.

The original act and as codified in 1876 provided that the personal representative of one whose death is caused by the wrongful act, etc., of another might "recover such sum as the jury deem just." In the present Code the provision is for the recovery of "such damages as the jury may assess;" and this is the only modification which the act of 1872 has undergone at all. In our opinion the change is purely a verbal one, and in no sense material. The "sum" referred to in the original act and in the Code of 1876 was nothing more or less than "damages" as that word is used in the Code of 1886, (§ 2589,) and the right to recover such sum as the jury deem just is no more, or less, than the right to recover such damages (sum) as the jury "may assess." Indeed, in Sullivan's case, these expressions are used inter-changeably; the "sum" recoverable is there denominated and treated throughout as "damages" and the process by which the jury arrives at the amount of such sum is called "the assessment of damages;" and it was probably at the suggestion afforded by this case that the codifiers of 1886 changed the phraseology of the statute in these respects by inserting the more technical equivalent for the phrase "such sum as the jury deem just." All sums recoverable for a wrongful act whether as punishment or compensation are "damages" in legal sense, and whatever sum the jury "deem just" is returned as their verdict, and the sum so returned constitutes the damages assessed by them.

The objection taken on constitutional grounds to the statute as it has been construed by this court seemed to us to be without merit. It is as clearly within legislative competency, of course, to punish negligence as it is to punish wantonness, willfulness or intentional wrong doing. It is not controverted at all that the common-law doctrine by which the imposition of punishment through a recovery at the suit of an individual of exemplary damages for wanton, willful or intentional misconduct is allowed, is well within organic limitations; and we conceive no basis for the distinction between the power to punish in this way for negligence and such power in respect of wantonness and the like when brought to the touch of constitutional guarantee intended to secure to the citizen certain rights as to the proceedings necessary to his arrest, arraignment, conviction and punishment for a violation of criminal law.

The act of 1872 having been, without modification in any material sense, twice re-enacted since the judicial construction we have been considering was put upon it—in the Code 1876 and again in the Code 1886—and being with that construction a constitutional exercise of the legislative power, it is now to be considered as if the terms and provisions, which have been evolved out of it and declared in concrete form by judicial interpretation, were expressly embodied in its letter.  This, we think, should close the door to the overruling of the cases which put that construction on it, and to the adoption of a different one.  This is the consideration which mainly moves the writer to a reaffirmation of the doctrine—declared in the cases of *Shearer*, *Sullivan* and *King*, *supra*; the question, in his opinion, is no longer an open one.  If it were, he should be much inclined to the view so ably urged by counsel, that the statute was primarily intended to afford compensation to the next of kin of a person coming to his death through the wrong of another, and to allow the imposition of punitive damages only in those cases where they would have been recoverable had the injury fallen short of death.  He is disposed to think that a too far reaching influence was accorded to the title of the act; and if this case were here upon first impression, he would be strongly inclined to rule that the legislative intent was to prevent homicides by giving an action for fatal injuries as to which no right of action existed before where the next of kin of the slain were in fact losers by his death, the recovery to be tolled by their loss unless the circumstances of the wrongful act warranted the imposition of additional damages as a punishment under well established common-law principles.  It is manifest that this construction would conserve the expressed legislative purpose, "to prevent homicides," since it attached a new and previously non-existing liability to all wrongful acts producing death, would be more in harmony with general legal theories and precedents, and give that the writer conceives to be, a more reasonable field for the operation of the limitation of the right of action to cases in which the deceased might have recovered had the injury not been fatal.  It would seem too, that this view should find some support in the provision giving direction to the sum recovered; and certainly it is strongly supported by that clause of the statute which provides that "the action shall not abate by the death of the defendant but may be revived against his personal represesentatives," since in such case, there could be no *punishment* of the wrong doer but only of wholly innocent

successors to his estate, and the whole policy of our laws, as of every civilized system of jurisprudence, is utterly at war with the idea of vicarious punishment, while the policy of enforcing *compensation* for wrongs done out of the estate of a deceased wrong doer is not opposed to any abstract notion of justice or to the practices of any theory of government. But be all that as it may, the legislature had the power to enact a law such as this one is with the construction this court has given it. They have in effect done so here by the re-enactment of this statute after its construction; and it now only remains for the courts to enforce it as thus constructed and re-enacted. This conclusion disposes of the exceptions reserved to the general charge given *ex mero motu* by the court and to the court's refusal to give charges 1, 7, 8 and 9, requested by the defendant, which were either affirmatively bad as mis-stating the rule for measuring the recovery, or misleading in that they tended to induce a belief on the part of the jury that their finding should or might be based on evidence of actual damages or the absence of such evidence.

Plaintiff's intestate was killed in a collision between a train of the defendant company and a train of the Birmingham Mineral Railroad Company on which he was a brakeman. The roads crossed each other at right angles. While the Birmingham Mineral train was crossing the track of the Richmond & Danville road, the train of the latter ran into it at or near the car on which the intestate was discharging his duties as brakesman and killed him. The evidence is without conflict that the R. & D. train was not stopped within one hundred feet of the crossing as is peremptorily required by the statute. Code § 1145. Indeed, it was not stopped at all in its approach to the crossing. This failure to comply with the statute was *per se* at least negligence on the part of those in charge of the R. & D. train for the consequences of which that company is answerable. The consequences or result of this negligence in the present instance being shown without conflict in the testimony to have been a collision with the Birmingham Mineral train wherein and whereby the intestate was killed, and the defense of contributory negligence on the part of, or imputable to the intestate not being made, the plaintiff was clearly entitled to the general affirmative charge, and if any erroneous rulings were made by the court upon matters bearing on the abstract right of recovery, they were without injury to the appellant and need not be reviewed here. Of this character, that is not prejudicial to defendant whether er-

roneous or not, were all the rulings on testimony, and the court's refusal to give charges 3, 4, 5 and 6 requested by the defendant.

Charge numbered 2 requested for defendant and refused is in the following language : "Under the evidence in this case the jury may in their sound discretion and guided by the evidence, if they should find for the plaintiff, find for only nominal damages." We do not doubt that it would be competent for the jury in actions like this to return a verdict for nominal damages only. The negligence of a defendant while sufficient to make out a technical cause of action, and plaintiff's right to recover judgment, might yet be so slight or so characterized by mitigating circumstances as that the jury would be justified in the imposition of such punishment only as is involved in the assessment of merely nominal damages, since there is no question of compensation or actual damages to be considered. But the fault of this charge lies in its invasion of the province of the jury in that it in effect tells them or, at least, its manifest tendency is to induce them to the conclusion that on the evidence adduced, this is a proper case for the assessment of only nominal damages and that to do so would be a proper exercise of their sound discretion. Whether the evidence made such a case or not was alone for the jury itself to determine. The charge was properly refused.

Affirmed.


