# Louisville & Nashville Railroad Co. *v.* Tegner, Execx.

*Action by Executrix to recover Damages for the Alleged Negligent Killing of her Testator.*

1. *Action for negligent killing; admissibility of evidence.*—In an action by a executrix against a railroad company to recover damages for the alleged negligent killing of her testator, who was her husband, evidence of the general, physical and mental condition, earning capacity and occupation of the plaintiff's testator, and the amount of money contributed by him from his earnings to the support and maintenance of his wife and those dependent upon him, is irrelevant and inadmissible.

2. *Same; same.*—In an action against a railroad company to recover damages for the killing of plaintiff's testator while riding as a passenger on one of the defendant's trains, where the

38

negligence complained of was the failure of the defendant to have its track, at the place of the derailment of the train which resulted in the death of plaintiff's testator, in a proper condition, and in having worn and defective rails at the place where the wreck occurred, if upon the direct examination of the section foreman having charge of the defendant's road at the place of the accident, he testified that the rails were in good condition and were worn but very little and not enough to injure them or cause the cars to leave the track, it is competent to ask him if the track would not have been considered in bad condition if it had been worn one-half inch in some places, which the plaintiff's testimony tended to show; and further, if such a wear on the track would not render it dangerous.

3. *Witness; admissibility of evidence tending to show bias.*—In an action against a railroad company to recover damages for the death of plaintiff's testator resulting from the derailment of a train on the defendant's road, where one of the witnesses introduced by the defendant, after having testified upon direct examination that the track was in good condition at the time of the wreck, further testified upon his cross examination that he rode over the track where the derailment took place two or three times a week, that he had a pass over the defendant's road, and was a general superintendent for a company engaged in the mining of coal, it is competent for the plaintiff to ask said witness the further question, if said company of which he was the general manager was not a large shipper over the defendant's road.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. A. A. COLEMAN.

This action was brought by the appellee, Margaret J. Tegner, as executrix of William F. Tegner, deceased, against the Louisville & Nashville Railroad Company, seeking to recover $30,000 damages for the alleged negligent killing of the defendant's testator. The complaint contained eight counts. The trial court having given the general affirmative charge in favor of the defendant as to the 1st, 2d and 6th counts, it is unnecessary to refer to them. The averments of the remaining counts of the complaint are sufficiently stated in the opinion.

The evidence showed that on the 3d day of August, 1898, plaintiff's testator was a passenger on defendant's

passenger train, having paid his fare, and that when the train reached a point near McAdory Switch, between Brookwood and Birmingham, several of the cars were derailed, and plaintiff's testator received injuries from which he died the next day.

There was evidence tending to show that at and near the point of derailment the cross-ties were rotten, some of the plaintiff's witnesses saying half of them were rotten, and others that a third of them were rotten. Plaintiff's evidence also tended to show that some of the rails were worn as much has half an inch, and that this would make the rails dangerous; that these conditions had existed for weeks, and that the section gang was along there almost daily. Plaintiff's testimony tended to show further that after the cars turned over many of the cross ties were crushed and mashed all to pieces, and that one of the rails was spread out and twisted around; and that after the accident, the defendant had the old ties taken out, and had them replaced with new ties all along the curve where the accident occurred. The plaintiff's testimony further tended to show that many of the spikes on the track, and many of the braces put there to hold the rails down had become loose and broken, some of the spikes working up from their sockets, and many of the braces having the eyelets broken out, through which the spikes were driven to hold them firm and steady. The plaintiff's testimony further tended to show that some days before the accident the attention of the section boss, one Howard Esco, had been called to the defective conditions named above, and that, although it was his duty to remedy the defects, he had not done so.

The testimony of the defendant's witnesses tended to show that the track, at the point where the wreck occurred, was in good condition; that the cross-ties were sound, the track at this point, having been repaired about ten days before the accident, the old ties having been taken out and removed and new ones put in; that the track was properly surfaced and guaged; and that it was constructed and maintained in the same manner as other well-regulated and equipped railroads constructed and main-

tained their tracks. It further appeared that trains passed over the track the day before and on the day of the wreck, and that to those on the train, whose duty it was to observe the track, it appeared all right.

Upon the cross-examination of the plaintiff, Margaret J. Tegner, and after she had testified that W. F. Tegner was her husband, she was asked the following separate questions: "How old was Mr. Tegner?" "Hadn't Mr. Tegner been afflicted for years with a chronic disease?" "Hadn't Mr. Tegner's mind been affected for years before his death to such an extent that he was unfit for the transaction of any and all business?" "What was his earning power at the time of his death—prior to the time of his death?" "What was he contributing from his earnings to the support and maintenance of his wife and those who were dependent upon him, if any?" "Did he or not, at the time of his death, have any occupation?" The plaintiff separately objected to each of these questions, upon the ground that they called for immaterial and irrelevant evidence. The court sustained the separate objections to each of the questions, and to each of these ruling the defendant separately excepted.

Upon the examination of one J. C. Duffey, as a witness for defendant, he testified that at the time of the accident he was section foreman of the section of the defendant's road in which the derailment resulting in the death of plaintiff's testator occurred; but that he had taken charge of the section only a few minutes before the accident; that he had, however, examined the section and the part of the road where the accident occurred, prior to his taking charge as section foreman; that he had found the rails in good condition and that they were but little worn, not enough to injure them, and that there was nothing in the condition of the track that would have a tendency to cause the cars to get off the track. Upon the cross examination of this witness, he testified that the inside of the outside rail, at the place of the accident, was worn but very little—in some places it may have been worn 1-8 of an inch; that the worn condition of the rail was in small places, while in other places the rail was not worn at all. Thereupon the following cross-

examination of the witness Duffey took place, as shown by the recitals in the bill of exceptions: "That would have been a pretty bad track if it had been worn one-half an inch in some places, wouldn't it? The defendant objected to this question upon the ground that there was no evidence that the rail was worn that much, and because the question calls for irrelevant, incompetent and immaterial evidence. Plaintiff's counsel stated that he proposed to prove that the rail was worn one-half an inch, and the court allowed the question to be answered. A. Yes sir. Q. Make it dangerous, wouldn't it? The defendant objected to this question because it called for irrelevant, incompetent and immaterial evidence and because it was not a proper subject for expert testimony. The court overruled the defendant's objection and the defendant excepted. A. Yes sir."

The facts pertaining to the other rulings of the trial court upon the evidence which are presented for review on the present appeal, are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant separately requested the court to give the general affirmative charge in its behalf upon the 3d, 4th, 5th, 7th and 8th counts of the complaint. The court refused to give each of these charges, and to each refusal the defendant separately excepted.

There were verdict and judgment in favor of the plaintiff, assessing her damages at $7,500. The defendant appeals, and assigns as error the several rulings of the trial court to which exceptions were reserved.

THOS. G. & CHAS. P. JONES and ALEX C. BIRCH, for appellant, cited *R. & D. R. R. Co. v. Freeman*, 97 Ala. 296; *Fields v. State*, 47 Ala. 607; *Tunner v. L. & N. R. R. Co.*, 60 Ala. 621; *Bemis v. Cen. Ver. R. Co.*, 58 Vt. 636; *Graham v. Pa. Railway Co.*, 139 Pa. St. 149; *Penn Co. v. Mitchell*, 124 Ind. 473; *Chicago v. McGiven*, 78 Ill. 349.

LANE & WHITE, *contra*, cited *R. & D. R. R. Co. v. Vance*, 93 Ala. 144; *Winslow v. State*, 92 Ala. 78; *Ala.*

*Min. R. R. Co. v. Jones,* 114 Ala. 519; *Cameron v. Montgomery,* 13 S. & R. 128; *Totten v. Burham,* 61 N. W. Rep. 58; 1 Greenl. on Evidence, § 450, note and cases cited.

TYSON, J.—The complaint contained eight counts; but upon three of them the court gave the affirmative charge for the defendant. The gravamen of the complaint in each of the remaining counts, was the alleged death of the plaintiff's intestate, who was a passenger upon one of the defendant's passenger trains, caused by the negligence of the defendant. This negligence as alleged in the third count, is based on the failure of the defendant to have its track at or near the place of the derailment of the train, in a proper condition; as alleged in the fourth count, in having rotten or unsound crossties at the place where train was wrecked; in the fifth, the failure of defendant's employes to securely spike or properly fasten one of the rails of the track, near the place of disaster; in the seventh, in having a worn or defective rail at the place where the wreck took place, and in the eighth, in the manner of the operation and management of the road.

Under the assignments of error which are insisted upon in argument, it is unnecessary to do more than state that the evidence offered in behalf of the plaintiff tended to support the allegations of negligence as alleged in each count of the complaint above set out, while that of the defendant tended to disprove them. There can not be, nor is there any controversy, that the evidence without conflict established a wreck or derailment of defendant's train upon which the plaintiff's intestate was a passenger, and that he received injuries from which he died the next day.

The first, second, third, fourth, fifth and sixth assignments of error are of a kindred nature and practically raise the same question. They involve the rulings of the court in refusing to allow the defendant to make proof of the age, physical and mental condition, earning capacity, occupation of the plaintiff's testator and the amount of money contributed by him from his earnings to the support and maintenance of his wife and those dependent

upon him.   Manifestly the purpose of offering this testimony was to afford the jury an admeasurement of damages based, not upon the degree of culpability of the act or omission committed by the defendant in killing him, but upon the compensation which it should pay for the wrong committed by it to the executrix of the deceased for the benefit of those who may have been deprived of his support and maintenance.   In other words, to make this evidence competent, we must overrule a long line of decisions of this court, in which it was held in each of them, that the damages recoverable are punitive and exemplary—"punitive of the act done and intended by their imposition to stand as an example to deter others from the commission of mortal wrongs or to incite to diligence in the avoidance of fatal casualties—the purpose being the preservation of human life regardless of the pecuniary value of a particular life to next of kin under statutes of distribution, the admeasurement of the recovery must be by reference alone to the quality of the wrongful act or omission, the degree of culpability involved in the doing of the act or in the omission to act as required by the dictates of care and prudence, and without any reference to, or consideration of, the loss or injury the act or omission may occasion to the living." *Richmond & Danville R. R. Co. v. Freeman,* 97 Ala. 294 and cases cited therein.   This, we are unwilling to do.

It is insisted that no matter what the construction of the statute, that a defendant who is sought to be punished, has the right to introduce every fact which illustrates or tends to illustrate the nature or degree of his offense.   This proposition may be true.   But what has the age, physical and mental condition, earning capacity or occupation of the person killed by the negligence of the defendant to do with the nature or degree of its offense?   It cannot be that the negligence which resulted in the death of an aged person, is any the less negligent if the same act caused the death of a young person.   So too the degree of negligence cannot be said to have been accelerated or diminished if the same act caused the death of a man having an occupation, and a

man without an occupation. These conditions of the person killed have nothing to do with the nature or degree of negligence, nor can they possibly mitigate or increase the punishment which the jury is authorized to impose for the commission of the offense, any more than the occupation or earning capacity of a deceased would authorize the jury in a murder case to impose a lighter or heavier punishment upon the defendant who murdered him. Manifestly if this testimony cannot be made the basis upon which a jury would be authorized to act, it has no place in the proceedings and the court committed no error in refusing to allow it to be introduced.

Under the authorities of *Tanner v. L. & N. R. R. Co.* 60 Ala. 621; *Walker v. Walker,* 34 Ala. 473, and *Eureka Co. v. Bass,* 81 Ala. 200, the questions propounded to witness Duffey, "That would have been a pretty bad track if it had been worn a half of an inch in some places wouldn't it?" and "make it dangerous wouldn't it?" which were allowed to be answered against the objection of defendant, were improper. See also *Bemis v. Central Vermont Railway Co.,* 58 Vt. 636; *Graham v. Penn R'y. Co.,* 139 Penn. St. 149; *Penn Co. v. Mitchell,* 124 Ind. 473; *City of Chicago v. McGiven,* 78 Ill. 349.

Witness John introduced by the defendant, testified to being on the train at the time of its derailment when the plaintiff's intestate was injured, and to the condition of the train, track, etc. after the wreck. On cross-examination he testified that he went over the track where the derailment took place two or three times a week, and that he rode on an annual pass; that he was superintendent and general manager of a company engaged in the mining of coal and had charge of its affairs at Belle Ellen; that the company were large miners of coal. At this point in the cross-examination, the plaintiff's attorney asked the witness: "And large shippers of coal over the Louisville & Nashville Railroad?" Defendant objected to the question because incompetent, illegal, irrelevant and immaterial. The court overruled the objection and the defendant excepted. Before the witness replied to the question, the plaintiff's attorney then said to the witness, "I mean through you as superintendent?" The

defendant renewed its objection to the question, assign-
ing the same grounds. The court overruled the objec-
tion, and the defendant excepted. The witness answered,
"Yes, sir." The defendant moved the court to exclude
this answer, which motion the court overruled. In this,
to my mind, the court committed an error. The rules of
evidence allow a wide latitude, on cross-examination in
order to show bias or interest in a witness, but the ques-
tion here asked goes beyond the bounds. If the answer
is allowed, a multitude of issues would arise, entirely
foreign to the real issue, consuming time and distracting
the attention of the jury from the real issue in the case.
It would be competent in that event to inquire into the
details of the business transactions between the defend-
ant and the witness's employer, the amount of business
and the terms of shipment, and further to prove that the
coal company and the defendant over which the coal
was shipped were not on friendly terms and reasons
therefor. If the reasons for the fact, as distinguished
from the status or fact of friendship are competent to
discredit the witness, it is equally competent to show
the reasons for the relations between the two companies
to sustain the witness. Besides the fact that one is a
large shipper over a railroad, by no means tends to
prove that the shipper is a friend of the railroad com-
pany.

In *Carpenter v. The State*, 98 Ala. 31, the lower court
sustained an objection by the State to the following
question, asked by the defendant on cross-examination
to show hostility of the witness to the defendant:
"Didn't you at one time when you were required to re-
duce the force of hands working under you, discharge
him in preference to a colored man, then in your em-
ploy?" This court said: "There was no error here. If
the question had been answered it would not have shown
without more, any hostile feeling on the part of the wit-
ness towards the defendant. * * * Many consider-
ations, such as skill, age, physical conditions, differences
in wages to be paid, industry and faithfulness to duty,
would control in such a selection without implying,
necessarily, any prejudice against those discharged. If

the question had been allowed its answer would probably have opened an inquiry into such considerations as we have named, which would have been apart from the issue in the cause."

The same principle was announced in the case of *Polk v. The State*, 62 Ala. 238. A majority of the court, however, are of the opinion that there was no error in this respect.

Reversed and remanded.

### On Application for Rehearing.

TYSON, J.—The only point presented in the application for rehearing is the one in which we held that the answers to the questions: "That would have been a pretty bad track had it been worn half an inch in some places, wouldn't it?" "And make it dangerous, wouldn't it?" were improper. Upon reconsideration it is our opinion that in this we committed an error. The answers to these questions were elicited upon a cross examination of a witness who had upon direct examination testified, "that the rails were in good condition, that they were not worn but very little; that they were not worn enough to injure them in any way—it was not worn to hurt anything. I didn't see anything there in that track that would have a tendency to make the cars get off the track." It was legitimate on cross-examination to rebut this testimony, if it be illegal, by illegal testimony. This point was not insisted on in brief of counsel when the case was first examined, and was overlooked in the preparation of the original opinion. Some of the judges are of the opinion that the evidence was proper anyway.

Affirmed.