# Randle *v.* Birmingham Railway, Light & Power Company.

## *Damages for Injury to Person on Track.*

(Decided Dec. 1, 1910.    Rehearing denied Dec. 22, 1910.
53 South. 918.)

1. *Appeal and Error; Harmless Error; Instructions.*—Where the instructions given for the defendant affect only the naked question of liability and not the question of the amount of recovery, and the jury find for the plaintiff, the giving of such instructions is not prejudicial to the plaintiff, although they may be incorrect.

2. *Same; Rulings Not Affecting the Amount Recovered.*—Where the plaintiff recovered judgment in an action for damages for personal injury and appeals therefrom, the trial court will not be reversed for any rulings bearing only on the question of the defendant's liability, and not affecting the amount to be recovered, because if they are erroneous they are without injury.

3. *Same; Instructions.*—Error to reversal will not be imputed in the giving of charges which might have been refused as being misleading.

4. *Death; Wrongful Death; Damages; Nature.*—Damages recoverable under the homicide act (Sec. 2486, Code 1907) are punitive only.

5. *Same; Instructions.*—Where the action was against a street railroad company, for damages for the death of a person on the track, and the action was under the homicide act, charges asserting that on finding for plaintiff, the jury could not, in estimating the amount of the damages, consider the pecuniary value of the life of the decedent, but could only award damages by way of punishment, and that if small damages would be sufficient punishment, it would be unjust to award large damages are not erroneous as precluding consideration of the loss of decedent's life in determining the amount to be awarded nor as suggesting that a small recovery would be proper, nor as invading the province of the jury; and they correctly stated

the law as to the pecuniary value of decedent's life not being a recoverable element.

6. *Same; Damages; Measure.*—In an action under the homicide act, it is the duty of the jury, on the finding that the railway company is liable for the death of pedestrians struck by a car, to award an amount sufficient to punish the wrong doing.

7. *Same; Instruction.*—In an action under the homicide act, a charge asserting, that if the jury believes that small damages would be sufficient punishment for the "acts" of the motorman, whose car struck the decedent causing his death, it would be unjust to award larger damages, while misleading in limiting the motorman's conduct to "acts" was not reversible error as the duty was on the plaintiff to ask an explanatory charge.

8. *Negligence; Nature.*—Negligence may result from omission respecting duty. An act or wrongful act denotes affirmative action or performance, and an expression of the will or purpose as distinguished from omission or wrongful omission, which denote a negative, and inaction.

APPEAL from Birmingham City Court.

Heard before Hon. C. W. FERGUSON.

Action by William J. Randle, as administrator, against the Birmingham Railway, Light & Power Company. Judgment for plaintiff in the sum of $500, and he appeals. Affirmed.

The following charges were given for the defendant: (1) "If, after a consideration of all the evidence, the jury should determine to award plaintiff damages, they cannot, in estimating the amount, consider the pecuniary value of the life of Randle, but can only award damages by way of punishment to the defendant; and if the jury believe that damages in a small amount will be sufficient punishment for the acts of its motorman, it would be unjust to award damages in a large amount." (2) "The defendant cannot be made to pay any damages for any error of judgment on the part of the motorman, if such there was, in ascertaining whether Randle was in a position of peril, or in ascertaining whether he was ignorant of the approach of the car." (3) "The damages in this case are by way of punishment, visited upon the defendant on account of the act of the motor-

man." (4) "Any damages that might be awarded in this case will be by way of punishment to the defendant for the act of the motorman; and, if the jury believe that a small amount is just and proper under all the circumstances, they are authorized to render a verdict in a small amount." (5) "The motorman of a street car is not obliged to stop a car as soon as he sees an adult person walking along the line of railroad ahead of the car, but may continue to run the car in a proper manner until he is confident of the fact that such person is unaware or heedless of danger." (6) "Seeing an adult person walking along the track, the motorman of an electric car may assume that he will turn aside and out of the way of the car; and the motorman can rest on this assumption until it becomes apparent that the person is unaware or heedless of the danger of being struck by the car." (7) "The motorman had the right to run the car without signals of the conductor and in the direction of Randle until he saw or knew that Randle did not intend to get off, or could not get off, the track, if he was walking along the track; and if the motorman in good faith merely erred in his judgment as to whether Randle was ignorant of the approach of the car, and until it was too late to avert the accident, before taking measures to prevent the accident, if he did take such measures, you must find a verdict in favor of the defendant, provided you believe from the evidence that the motorman promptly and diligently used all the means at his command to avoid the injury, after the discovery of Randle's peril." (9) "A mere error of judgment on the part of the motorman, operating a car, if made in good faith, as to whether a pedestrian walking on or dangerously near the railway track is in danger of being struck by the car, does not amount to such negligence as is complained of in

[Randle v. Birmingham Railway, Light & Power Company.]

the counts of the plaintiff's complaint which are submitted to you by the court."

M. M. ULLMAN, W. A. DENSON, F. S. WHITE & SONS, and JOHN L. BURNETT, for appellant. While it is true that an engineer or motorman may assume that a trespasser will leave a track, this assumption does not apply when the evidence shows that the trespasser does not know of the approach of a car, and the engineer or motorman knows, or should have known from the circumstances and his actions, that he was ignorant of the approach of the car, which failed to give any signals of approach.—So. Ry. Co. v. Bush, 122 Ala. 122; B. R. & E. Co. v. Smith, 25 South. 768; So. Ry. Co. v. Shelton, 34 South. 194; C. of Ga. v. Partridge, 34 South. 929; Hamilton v. A. G. S., 33 South. 157; L. & N. v. Trammel, 9 South. 870; B. R. L. & P. Co. v. Jones, 45 South. 177; Tuscaloosa B. R. Co. v. Fuller; B. R. & E. Co. v. Bowers, 20 South. 345; L. & N. v. Young, 45 South. 338; 37 S. W. 764; 54 S. W. 626; 34 S. W. 76; 202 U. S. 600; 5 L. R. A. 786; 23 S. W. 433; 29 Atl. 557; 20 S. W. 960; 66 S. W. 738; 12 S. W. 205; 58 N. Y. Supp. 1039; 2 Thomp. on Neg. sec. 1738. The case of Black v. L. & N., 89 Ala., is subject to these limitations.— Turner v. R. R. Co., 60 Ala. 621; Frazer v. R. R. Co., 81 Ala. 185; R. R. Co. v. Blakely, 59 Ala. 471. On these authorities it is submitted that the court erred in giving the charge requested by the defendant. As to the question of damages, see.—Coleman v. Pepper, 49 South. 310; Garrett v. Sewell, 108 Ala. 521; Alley v. Daniels, 75 Ala. 403. Some of the charges were bad because highly suggestive and argumentative. As to what is negligence see the following cases.—Grant v. Moseley, 29 Ala. 302; Kendrick v. Towle, 1 Am. St. Rep. 526; 5 Words & Phrases, 4743.

TILLMAN, BRADLEY & MORROW, for appellee. The jury awarded appellant substantial damages, and hence, the court will not consider any rulings of the trial court affecting the naked right of recovery, and not affecting the measure of damages, however erroneous in fact such rulings may have been, on the theory that, if error, it was without injury.—*Carrington v. L. & N.,* 88 Ala. 475; *Donovan v. S. & N. A. R. R. Co.,* 79 Ala. 429. In a case of this character the pecuniary value of decedent's life is not an element of recoverable damages.—*R. & D. R. R. Co. v. Freeman,* 97 Ala. 294; *L. & N. v. Tegner,* 125 Ala. 593. If the charge was misleading, the duty was on the plaintiff to ask explanatory instructions.—*A. G. S. v. Bailey,* 112 Ala. 167. In actions brought under the homicide statute, the damages are punitive and not compensatory.—Authorities supra. Counsel discuss other assignments of error and insist that on the above authorities, and on the authority of this case on former appeal there was no error of which appellant can complain.

McCLELLAN, J.—Previous appeals of this case will be found in 149 Ala. 539, 43 South. 355, and 158 Ala. 532, 48 South. 114. This appeal is prosecuted by the plaintiff, from a judgment in his favor for $500 damages. Under the direct authority of *Donovan v. S. & N. R. R. Co.,* 79 Ala. 429, and *Carrington v. L. & N. R. R. Co.,* 88 Ala. 472, 6 South. 910, "we will not consider as revisable error any ruling of the primary court bearing merely on the naked question of the defendant's liability, and not affecting the amount of the damages recovered, however erroneous it may be in fact, because, if error, such ruling is error without injury to the plaintiff." The damages recoverable in this action fall under the influence of the homicide act (Code

1896, § 27; Code 1907, 2486), and are, hence, punitive only.—*L. & N. R. R. Co. v. Street,* 164 Ala. 155, 51 South. 306; *R. & D. R. R. Co. v. Freeman,* 97 Ala. 289, 11 South. 800, among others.

It appears, affirmatively, from the bill of exceptions that all counts save that designated Z were withdrawn by plaintiff, and that that count was the only one submitted to the jury. Count Z is predicated upon negligence *after the discovery of intestate's peril,* the vital averment therein being that the "negligence consisted in this: The servants or agents aforesaid, after becoming aware of the perilous position of plaintiff's intestate upon the track of the defendant in front of a moving car, negligently failed to use all means at their command to avoid injuring said intestate when by the use of said means said injury would have been avoided." As to the relation of intestate to the way in which he was killed, the bill of exceptions recites: "In their argument to the court and jury, after the evidence had closed, plaintiff's counsel admitted that Randle was a trespasser on defendant's track." The report of the appeal will contain the charges upon which the assignments of error are predicated.

The application of the rule of the *Carrington* and *Donovan cases, supra,* eliminates from consideration charges (we number) 2, 5, 6, 7, and 9, given at defendant's instance, which, as we interpret them, treated alone the naked question of substantive liability vel non, and did not affect the inquiry as respected the measure or amount of the damages.

If we correctly resolve the argument of counsel for appellant, leading to the exemption of these charges from the influence of the doctrine of the *Carrington* and *Donovan Cases, supra,* it is premised upon the fact that the damages recoverable under the homicide act, while

only punitive, depend for *amount* upon the *measure of culpability* attending the act causing the death; and that that measure of culpability must itself depend upon the elements, nature, and scope of the obligation to do under conditions given, that which, in legal parlance, we generally nominate as *duty*. The conclusion is that the intent of the statute is that the *measure* of the punishment, viz., the amount of damages imposed, should consist with the degree of culpability affecting the act, resulting in death, and that in proportion as the *duty* to avert the tragedy is more exacting, or higher, the *measure* of punishment will pari passu enhance; and, hence, a charge that minimizes the *duty* correlatively and proportionately affects the damages recoverable, and, in consequence, does not *alone* touch the *mere naked question* of liability vel non, resolved by the jury on the trial below, in plaintiff's favor.

As the argument indicates, the charges do not refer, even inferentially, to the measure of the recoverable damage for the wrong alleged. Two of them (5 and 6) treat of the presumption an operative has the right to indulge, within legally defined limits, that one, apparently adult, walking on a railway, will take account of the approach of a train or motor, and remove himself from the range of injury thereby. The other (7) hypothesizes the exemption of the operative from the imputation of negligence, if he "in good faith merely erred in his judgment as to whether Randle was ignorant of the approach of the car, and waited until it was too late to avert the accident before taking measures to prevent the accident." This charge then concludes to a finding for defendant, provided after discovery of Randle's peril the operative used all preventive means at command to avert injury. Those numbered 2 and 9

[Randle v. Birmingham Railway, Light & Power Company.]

are not, in principle, as here important, materially different from charge 7.

The verdict comprehended and denied, in its finding, any advantage to defendant from the propositions of the charges, whether they were abstractly sound or were correctly phrased or not; but, on the contrary, the verdict concluded to liability, and hence in plaintiff's favor. These charges deal *alone* with the conditions to liability, viz., with what constitutes negligence under the facts hypothesized. In none of them was the *degree* of culpability, adverted to in *R. & D. R. R. Co. v. Freeman supra,* and in *L. & N. R. R. Co. v. Tegner,* 125 Ala. 599, 28 South. 510, treated; and it is the *degree* of culpability upon which the jury determine the quantum of the damages to be awarded as punishment. That the propositions stated in the charges immediately tended to affect the *liability* of the defendant in this cause, and in that general sense tended to affect the damages recoverable is of course evident. But the finding of the jury in plaintiff's favor neutralized that effect, though erroneously, it may be assumed (see *L. & N. R. R. Co. v. Young,* 153 Ala. 232, 45 South. 238, 16 L. R. A. [N. S.]301), invited to express a contrary conclusion.

The charges (we number) 1, 3, and 4 present instructions touching the recoverable damages. They also will appear in the report of the appeal.

There are several criticisms in brief of charge numbered 1. Each of these will be noticed. The first clause of it restrained the jury from awarding damages based upon the "pecuniary value of the life of Randle." The damages recoverable in this action were punitive only for the wrong—not actual or compensatory. The pecuniary value of a life is essentially suggestive, and that only, when speaking of damages for life lost, of a recovery based upon compensation. The charge in the

particular under review, is not, we think, capable of being interpreted as affirming that the loss of Randle's life was not to be considered by the jury in determining the amount of damages to be awarded. It, in this connection, expressed the law in this character of action, viz., that the pecuniary value of the life taken could not be an element of recoverable damages.—*L. & N. R. R. Co. v. Tegner,* 125 Ala. 599, 28 South. 510. The omission of the charge to contain definite directions and limitations for the assessment of punitive damages, rendered it misleading, but not reversible error, and for that reason the charge might have been refused, as was expressly ruled in *Coleman v. Pepper,* 159 Ala. 310, 314, 49 South. 310. In that instance, the court declined to reverse the trial court for granting a new trial because of the misleading tendency of the charge considered, assuming that the trial court was better advantaged to determine the effect of the misleading tendency than was this court. It will be noted that *Burgess' case,* 119 Ala. 555, 564, 25 South. 251, 72 Am. St. Rep. 943, cited in *coleman v. Pepper,* is not in accord with the ruling made in *Coleman v. Pepper.* Indeed, in the particular here pertinent, the ruling in the *Burgess Case* is opposed to that made in *Coleman v. Pepper.* Notwithstanding, we are not now disposed to depart from the ruling in this regard, of *Coleman v. Pepper,* preferring to remit the party against whose rights the charge may be taken to conclude to explanatory instructions.—*Daniel v. Bradford,* 132 Ala. 262, 31 South. 455; *A. G. S. R. R. Co. v. Jones,* 71 Ala. 487; 2 May. Dig. pp. 573-575.

There is no merit in the criticism that the charge was suggestive that a small recovery was proper in this instance or that the court so thought. It was the duty of the jury finding the defendant liable to award an

amount in damages sufficient to punish for the wrong done. No more damages than that should be awarded in such cases. That is the criterion under the homicide act. The charge did not invade the jury's province. It conditioned the quantum of damages, by way of punishment, upon the finding by the jury that a small award would meet the demand of *sufficient punishment,* and, if they so believed, a large award should not be made.

The last criticism of this charge is, in our opinion, well taken, though not, as will later appear, with the result that a reversal will enter. It complains of the limitation upon the measure of the damages to be assessed, as hypothesized, by the restriction of the basis therefor, to the "acts of the motorman."

Our homicide act was enacted in 1872 (Acts 1871-72, p. 83.) As then phrased it declared liability where death was caused by the "wrongful act or omission of another." It became section 2641 of the Code of 1876, and the wrongful cause of the death was described as in the original act. In the Code of 1886, § 2589, the statute, in the particular under consideration, was altered so as to read: "For the wrongful act, omission, or negligence," etc. The Codes of 1896 and 1907 adopted the phrase as written in the Code of 1886.

It thus appears that the original enactment predicated liability upon *wrongful act or omission,* and that later, in 1886, the Legislature conceived the idea that even *act or omission* might not comprehend all the wrongful causes of death to which it was the legislative intent to apply the remedy given by the homicide act. But aside from the intended effect of the interpolation of the descriptive term *negligence*—an effect doubtless superinduced by the express broadening of the statute to include servants, etc., not appearing in

the original enactment nor in the codification of 1876, in this particular—it is apparent that the Legislature, originally and throughout subsequent adoptions of the statute, contemplated distinct, separate references in the employment of the two terms, viz., *act* and *omission*. Obviously, it was conceived that a *wrongful act* and a *wrongful omission* would be and were distinct, different *causes* of death, within the homicide act. *Negligence* may result from *omission* in respect of duty.—*Grant v. Moseley,* 29 Ala. 302. But *act* and *omission* token different conceptions. *Act* denotes the affirmative. *Omission* denotes the negative. Act is the expression of will, purpose. Omission is inaction. *Act* carries the idea of performance. *Omission* carries the idea of a refraining from action. Webster's New International Dictionary defines *act,* primarily as "that which is done or doing; the exercise of power, or the effect of which power exerted is the cause; a performance; a deed." That work thus defines *omission*: "Act of omitting; state of being omitted; neglect or failure to do something; that which * * * is left undone."

It will be readily seen that the distinction taken by the Legislature, in the construction and readoption of the homicide act, was and is fully justified by the meaning, commonly accepted, of the terms *act* and *omission*. And this is true notwithstanding the employment in the homicide act of the term *negligence* in the disjunctive. That *negligence* may, upon occasion, be the synonym of *wrongful omission* cannot detract from the evident distinction, taken and contemplated, in the employment of the terms *act* and *omission*.

The Rhode Island court, through Durfee, C. J., in *Bradbury v. Furlong,* 13 R. I. 15, 43 Am. Rep. 1, recognized the distinction in construing the homicide act of that state, and ruled, as correctly foreshadowed in

the headnote, that a "statute giving a cause of action for death 'inflicted by the wrongful act of another,' does not embrace the case of mere passive neglect or omission of duty." In the opinion it is pertinently said that "an injury resulting from a mere omission to act would not ordinarily be described as an injury inflicted by a wrongful *act.*" The decision is in point; and we think it is sound.

While the terms *act* and *omission* are so distinctly employed in the homicide act in defining the scope of the right and remedy thereby created, it does not follow that instructions to the jury, wherein the *character* of damages, viz., punitive, to be imposed, if liability was found, was the chief idea expressed in the instruction, referring alone to the *act* of the alleged derelict operative as the basis for the punishment sought by the plaintiff to be imposed, were affirmatively erroneous, and were not possessed, merely, of misleading tendencies. The insistence is that such an instruction limited the right to recover, or restricted the basis of culpability on the part of the operative, to the single means of death to *wrongful act;* whereas the homicide act defines those means as "wrongful act, omission, or negligence," and the settled construction of the statute grades the quantum of the punishment upon the *degree* of culpability of the derelict person. The purpose of the homicide act is to fix the punishment for the *result* of the "wrongful act, omission, or negligence," viz., the death. Taking its terms literally, the homicide act defines the *means* of the homicide, for which the right and remedy is created, as being *act, omission, or negligence.* If the charges in question had assumed to define the sole cause, viz., by *wrongful act,* of the death of Randle, and from that premise had undertaken to conclude against a recovery for his death unless that sole cause

[Randle v. Birmingham Railway, Light & Power Company.]

was the sole means of his death, then obviously the charges would have erroneously limited the right to recover, and would have been error to reverse. Such was not, as we have indicated, the certain effect of the instructions. In the particular under review, the word *act* was reasonably referable to the *result* wrought by the wrongful means. The a*ct,* as used in the instructions, may have been reasonably interpreted to refer to the consequence—the ultimate effect—of the motorman's dereliction, viz., the death of Randle. If the term *act,* as employed in the instructions, was reasonably susceptible of the interpretation that it referred to the *result,* and not to the cause of that effect, viz., Randle's death, then it was merely, at most, misleading in its tendencies. Being so, it might well have been refused; but to give it was not reversible error. The plaintiff should have requested explanatory instructions, removing the possible impression that only for the motorman's *act*—not for his *omission*—could the punishment be imposed upon the defendant.

There is no prejudicial error shown, so the judgment must be affirmed.

Affirmed.

SIMPSON, MAYFIELD, and SAYRE, JJ., concur.